ASSOCIATED INDEMNITY CORPORATION v. McGREW.

No. 10992.

Court of Civil Appeals of Texas. Galveston.

July 3, 1940.

Rehearing Denied Aug. 1, 1940.

Vinson, Elkins, Weems & Francis, of Houston (C. M. Hightower, of Houston, of counsel), for appellant.

Masterson & Bryan, of Angleton, and E. B. Pickett, Jr., and Bradford Pickett, both of Liberty, for appellee.

CODY, Justice.

This is a workman's compensation case.

It is sufficient, we think, for the purposes of this opinion to limit the statement

of the pleadings to this: That appellee sued for compensation for total and permanent disability during 401 weeks, beginning with the 8th of December, 1937, the date he received his injuries; and in the alternative appellee sued for compensation for permanent partial disability for such time as the proof failed to show him entitled to compensation for total permanent disability. As a basis for a wage rate under one of the three methods provided by Art. 8309, Revised Statutes 1925, appellee pled that at. the time he was injured he had worked for more than a year in the same employment, either for his then employer or other employers, for wages of $7.50 per day and more, working 7 days per week; and in the alternative he pled that other employees of the same class working substantially the whole of the immediately preceding year in the same or a neighboring place were earning $7.50 per day, and more; and further in the alternative, appellee pled as a fair and just wage compensation, the sum of $20 per week.

Appellant answered by a general demurrer and a general denial.

The court submitted but four special issues to be answered by the jury, who found: (1) That the total incapacity to work which appellee suffered as a result of the injuries sustained on December 8, 1937, was not permanent. (2) That such total incapacity had continued and would continue from December 8, 1937, 104 weeks. (3) That appellee has suffered and will suffer partial incapacity after the end of his period of total incapacity. (4) That the percentage of such partial incapacity suffered by appellee is 60 per cent.

The appellee, in his motion for judgment on the verdict, set forth as the way the compensation rate should be computed, as follows:

"The amount of $7.50 being the average daily wage upon which to calculate the compensation that plaintiff is entitled to recover, the figures set forth in said draft of judgment are arrived at by this calculation, to-wit: 300x$7.50 is $2,250.00, which is the average annual wages; 1/52 of that amount is $43.26, which is the average weekly wages; 60% of that amount is $25.95, therefore, plaintiff is entitled to the maximum of $20.00 per week based on total incapacity for a period of 104 weeks, or a total. amount of $2,080.00; but the defendant having paid plaintiff for 34 weeks at $20.00 per week, a total of $680.-00, such amount deducted from the said item of $2,080.00 leaves $1,400.00 as the total amount due and to become due plaintiff during said total incapacity period of 104 weeks. Up to the week ending July 5, 1939, forty-eight weeks of said period have already matured, and figured at $20.-00 per week, the total amount so matured is $960.00, leaving a balance of $440.00 included in said item of $1,400.00 not yet matured. Also upon said matured amount of $960.00 interest, figured at 6%, has accrued to date, in the amount of $25.54, the total of said principal amount and interest thus being $985.54.

"As above stated, the average weekly wages is $43.26 and the percentage of plaintiff's partial incapacity as found by the jury is 60%, therefore 60% of said $43.26 is $25.95, and 60% of said amount ($25.95) is the weekly wage rate upon which to figure plaintiff's recovery during the period of his partial incapacity, such period being 297 weeks, this figure being arrived at by deducting the total incapacity period of 104 weeks from 401 weeks; 60% of $25.95 is $15.57, this multiplied by 297 makes a total of $4,624.29, the amount plaintiff is entitled to recover for said period of 297 weeks' partial incapacity. See Section 11, Article 8306, Workmen's Compensation Law."

The court entered judgment in accordance with appellee's motion for 104 weeks' compensation at $20 per week, and 297 weeks' compensation. at $15.57 per week, in compliance with appellee's quoted motion.

Appellant seeks reversal of the judgment on the ground, first: That there was no basis for judgment against it, because (a) there was no evidence to establish a wage rate; (b) the evidence was insufficient to establish a wage rate; (c) and there were no jury findings upon which to base a wage rate. Second: That the court should have submitted appellant's requested issues on (a) permanent partial disability; (b) temporary partial disability; and decrease in percentage of partial disability. Third: That the court should have submitted appellant's requested issue as to the difference between average weekly wages at the time of the accident and the average weekly wage-earning capacity during partial incapacity; and should have ruled that there was no evidence, and insufficient evidence to establish a compensation rate for

partial incapacity. Fourth: That the court rendered excessive judgment for partial incapacity.

With reference to appellant's first contention, relating to the wage rate, the evidence was as follows: Appellee testified that on December 8, 1937 (the date of his injury), he was working for Smith & McDannald in the Hastings oil field in Brazoria County as a rotary helper drilling an oil well, but had only been working for such employer for two or three months; that before he came to the Hastings field he had worked at Rotan and at Dayton and in Louisiana; that since he had started to work he had done oil field work, pipeline work and mechanical work; when injured he was receiving $7.50 per ·day for eight hours work, and had received that while working in the Hastings field; that he had been doing the same kind of work for four years, and had been doing general oil field work for four to six years. T. O. Johnson, a witness for appellee, testified that he lived in Dayton, and knew appellee; he also testified that he (Johnson) had been an oil field worker in the drilling department for nine years, and that at the time appellee got hurt he, Johnson, was working for Loflin Brothers in the Hastings oil field; that he started working there the first part of January and left there just before Christmas in 1937; and that during that time he worked as much as 300 days; that during the first part of 1937, he was paid $7 per day, and in February they started paying him $8 per day; that he worked 7 days a week, and that every 2 weeks to 20 days he would earn 1 day overtime.

It is obvious that the evidence was insufficient to establish a wage rate under Section 1 of Art. 8309, which reads: "If the injured employe shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed." The evidence shows only what appellee made in the employment he was following for 2 or 3 months, and not what he earned in the same employment for substantially the whole of the year immediately preceding the injury.

It is appellant's contention that the evidence was likewise insufficient to establish a wage rate under Section 2 of Art. 8309, which reads: "If the injured employe shall not have worked in such employment during substantially the whole of the year, his average annual wages shall consist of three hundred times the average daily wage or salary which an employe of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment in the same or a neighboring place, shall have earned in such employment during the days when so employed." The respect in which appellant contends that the evidence is insufficient to establish a wage rate under Section 2 is this: That the evidence relative to the time that T. O. Johnson worked,· conclusively shows that from January 1, 1937, to December 1, 1937 (the date appellee was injured), the said Johnson worked 342 days, and accumulated 15 days' overtime, or a total of 357 days. And appellant further points out that Johnson gave no testimony to the effect that the wages he received and the time he worked was the usual and customary wages paid to, and time worked by, employees in the Hastings field; and that under no theory of law could the trial court fix and determine the wage rate to be applied under Subdivisions 1, 2 or 3 of Art. 8309. In support of its contention that the service experience of T. O. Johnson could not be used on which to compute the wage rate to be applied under Subdivision 2 of Art. 8309, because the evidence showed that he had worked substantially more than 300 days within a calendar year or the 12-month period next preceding the injury, appellant cites Petroleum Casualty Co. v. Williams, Tex.Com. App., 15 S.W.2d 553, 555. In that case the court construed what was meant by the words "year" and "substantially" as used in Subdivisions 1 and 2. And while it is true that the court there held that "substantially a year, within the meaning of subdivisions 1 and 2, is exactly 300 days or close to, or near to 300 days", the court did not hold that the experience or service record of workmen who had only worked exactly 300 days within the calendar year next preceding the injury, or who had worked close to, or near to, 300 days within the calendar year next preceding the injury to the claimant could be used to make computation under Subdivision 2. If the

evidence here shows that T. O. Johnson worked 357 days, of 8 hours each, between January 1, and December 8, 1937 (the date of appellee's injury), that does not mean that the 300 days which Johnson actually worked next preceding December 8 cannot be used to compute the wage rate under Subdivision 2. In other words, the fact that a workman has worked 7 days a week, and in addition has accumulated 15 days' overtime within the space of the calendar year next preceding the injury to a claimant, cannot disqualify his experience or service record from being shown in evidence as to the working year, consisting of 300 days worked next preceding an injury. We do not agree with appellant that any cases which it has cited have so held, and in our opinion the Williams case, just referred to, is authority against rather than for such proposition. Under the ruling in the Williams case, when a workman has worked 300 days next preceding an injury he has worked a year so far as the purposes of the statute are concerned, albeit he may have worked substantially less than a calendar year of 12 months. The unit of measure to be applied under Subdivisions 1 and 2, the Williams case holds, is a work year consisting of 300 days actually worked by the injured person, or a similar employee, next preceding the injury, or about 300 days. The objection to the consideration of the service experience or work record of T. O. Johnson as fixing a wage rate under Subdivision 2, based on the fact that it shows that he worked 357 days of 8 hours each, next preceding December 8, 1937, and subsequent to January 1, 1937, is without merit; it is enough that he worked 300 days next preceding December 8, 1937, at an established wage rate. If appellant's contention were valid, in a case where an employee had worked 364 consecutive days next preceding an injury, and within 12 months, and had received the same wage therefor, his service record would not be available under either Subdivisions 1 or 2, because he had worked substantially more than 300 days within 12 months next preceding the injury. Such a construction does not commend itself to us as reasonable. Of course what we here say has no application to a situation where the method of calculation provided for in Subdivisions 1 and 2 do not have to be resorted to to determine the average annual wage. Howard v. Texas Employers' Ins. Ass'n, Tex.Com.App., 292 S.W. 529; and see Texas Employers' Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399.

■ From what has been said it follows that the evidence to the effect that T. O. Johnson, a workman of the same class with appellee, had received a daily wage of $8 for 300 days next preceding December 8, 1937, was competent under Subdivision 2.

■ Appellant contends that it was necessary at all events to submit an issue to obtain a jury finding on the wage rate. However, the evidence on T. O. Johnson's service record was not disputed. "Where the record shows without dispute that an employee has been working for a stipulated weekly wage or a stipulated daily wage for a period of more than one year next preceding the injury, it is not necessary for the matter to be submitted to a jury for its determination." Casualty Reciprocal Co. v. Stephens, Tex.Civ.App., 25 S.W.2d 180, 183. And in the same case, when it later came before the Commission of Appeals, Judge Ryan said: "* * * Therefore it was not necessary to have submitted either of said issues. Where the record shows without dispute that an employee has been working for a stipulated weekly wage or a stipulated daily wage for a period of more than one year next preceding the injury, there is no disputed issue for a jury to pass upon. Admitted facts should not be submitted. Lamar v. P. & S. F. Ry. Co. (Tex.Com.App.), 248 S.W. 34." 45 S.W. 2d 143, 147.

■ Now it is undisputed that T. O. Johnson's average daily wage for the 300 days next preceding the injury, and within the 12 months next preceding the injury, was in excess of $7.50. Appellant figures Johnson's daily wage from January 1 to December 8, 1937, to have been $7.83, figuring the days he worked in January and February at $7 per day, and the remainder of the time at $8 per day, inclusive of overtime. And if this be correct, the fact that the court used as the average daily wage rate the sum of $7.50 (which was the sum alleged by appellee in his petition) for making his computation in the judgment rendered, is not harmful to appellant. In Fidelity Union Casualty Co. v. Carey, 55 S.W.2d 795, 796, the Commission of Appeals, through Judge, now Justice, Sharp, said: "The insurance company suing to set aside the compensation award could not complain that compensation was computed upon average daily wage, where

consideration of total yearly earnings would have resulted in an increased weekly rate." (Citing authorities.)

There could be no harm to appellant in the granting of appellee's motion to treat the daily wage rate that was proven without dispute to be in excess of $7.50, as being $7.50. On such basis the average annual wages, as shown by appellee's motion for judgment copied in part hereinabove, is $2,250, and 1/52 of that amount, on the average weekly wage, is the amount of $43.26. We are unable to see how any harm could have resulted to appellant in awarding to appellee the maximum weekly award based on total incapacity for a period of 104 weeks, less the 34 weeks at $20 per week which had already been paid.

For the reasons given it is our duty to overrule the first ground urged by appellant for reversal.

Appellant requested the court to given the following special issues, which requests were refused:

"Special Issue No. E: Do you find from a preponderance of the evidence that the plaintiff sustained any partial incapacity, as a result of his injury on December 8th, 1937?

"Special Issue No. F: When do you find from a preponderance of the evidence such partial incapacity began, if you have found that the plaintiff sustained partial incapacity in answer to Special Issue E?

"Special Issue No. G: Do you find from a preponderance of the evidence that such partial incapacity, as referred to in Special Issue F, was temporary?

"Special Issue No. H: When do you find from a preponderance of the evidence that such temporary partial incapacity did or will cease, if you have found such temporary incapacity to exist, as referred to in Special Issue G?

"Special Issue No. J: Do you find from a preponderance of the evidence that the percentage of partial incapacity, if any, will decrease in the future, if you have found in answer to Special Issue 4 that the plaintiff has sustained partial incapacity?

"Special Issue No. K: At what period in the future do you find from a preponderance of the evidence that the percentage of partial incapacity will decrease?

"Special Issue No. L: To what extent do you find from a preponderance of the evidence that such percentage of partial incapacity will decrease?

"Special Issue No. M: Do you find from a preponderance of the evidence that such decreased partial incapacity will be permanent?"

■ It is well settled that a defendant's general denial is sufficient to raise the issue of partial incapacity, and its permanent or temporary character, where partial incapacity, and its permanent or temporary character have been pleaded by a plaintiff. Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, 315, and case there cited and referred to. If there was proof made that appellee sustained temporary partial incapacity, or that the percentage of partial incapacity would decrease in the future, the failure of the court to give the issues would be error requiring a reversal of the judgment. The substance of the evidence in this connection is as follows:

Appellee testified that he was injured on the morning of December 8, 1937, by "tongs", which were 5 feet long, and weighed about 200 pounds, striking him across the back with great force, knocking him unconscious. That he remained in the hospital about 11 days. That he was treated while there by Dr. Gates, who took X-ray pictures of his back and kidneys, and saw Dr. Gates the last time about December 28, 1937. In early January, 1938, not feeling that he had improved, appellee went to Doctors Dunnam and Kreimeyer, who discovered that in addition to his back injury that a leg had been broken. That in March Doctors Dunnam and Kreimeyer called in Dr. Cowart for consultation on operating on appellee's broken leg; and in April, 1938, the leg was operated on. That he continued under the treatment of Drs. Dunnam and Kreimeyer until August, 1938; and until that time he improved very little.

Dr. Gates, who had seen appellee between the date of the injury, December 8, 1937, and December 28, 1937, numerous times, testified at the time of the trial (June, 1939) that appellee would be completely well in 3 or 4 months from the time he was injured.

Dr. Cowart made an examination of appellee's spine and knee in March, 1938, and saw the X-ray pictures which had been made, and testified that at the time he made such examination appellee was totally disabled, and that he would be unable to work for 6 to 8 months from the time he saw appellee, and that he would have some

partial permanent disability. That the partial disability might remain the same, but it would likely decrease, and that the usual amount of permanent disability from such a fracture is from 5 to 15 per cent., and from the knee he would have some additional disability, and fixed his permanent partial disability at anywhere from 20 per cent. to 30 per cent.

Dr. Dunnam, who saw appellee for about a year, beginning January 4, 1938, testified that appellee was totally disabled at the time he last saw him (April 21, 1938), and that his total disability would last for a year; that appellee would have permanent partial disability of from 40 to 50 per cent.

Dr. Kreimeyer made X-ray pictures of appellee's back and knee on January 5, 1938. On March 18, 1938, he again made pictures and they showed no improvement or change from January 5, 1938. On July 11, 1938, after the knee had been operated on, he took pictures of the spine, and they did not show any change over the other pictures. That appellee would have partial disability following the period of total temporary disability, and that his partial disability would be permanent, and would be around 40 to 45 per cent.

Dr. Barnes made an examination of appellee on May 24, 1939, at appellant's request; had appellee X-rayed. Dr. Barnes testified at length. He testified that injuries of the kind appellee suffered from had a tendency to get better; that as time passes on, "these little broken fragments become encysted or incapsulated * * * and as they do, they give less trouble, regardless of whether they unite any more with the bone or not." His conclusion was that, all things considered, appellee had sustained a permanent partial disability of from 15 to 25 per cent.

Dr. Harris, who took the X-ray pictures for Dr. Barnes, gave some opinions in the abstract, but if he ventured to pass on the character of the partial disability of appellee as to being permanent or temporary we have failed to note it. Certainly no testimony given by him would authorize the submission of any issue, the failure to give which appellant here complains of.

■ The opinion of Dr. Gates that appellee would be fully recovered in from 3 to 4 months was not sustained by subsequent progress. He had not recovered when examined by Dr. Barnes about a year and a half after his injury. And he was found to be suffering total disability more than 6 months after his injury. The last time Dr. Gates had seen appellee was about 20 days after the injury occurred on December 8, 1937. An opinion of a physician as to the condition of recovery that a patient will experience, which he subsequently finds from physical facts to have been erroneous, is entitled to no weight; just as the opinion of an oil expert that no production of oil can be had from a particular location in paying quantities is entitled to no weight against the physical production of oil from such location. Had Dr. Gates enjoyed the advantage of having examined appellee at the later dates, when the other physicians examined him, appellee's actual condition would have been as apparent to him as it was to such other physicians. There is simply no scintilla of evidence but that when appellee was last examined, May 24, 1939, he was still suffering partial disability. And we have concluded, after full deliberation, that the evidence of Dr. Gates, to the effect that appellee would fully recover in from 3 to 4 months, is insufficient to have required any issue submitted thereon, in view of it being undisputed that his opinion was by later developments, proved wrong.

■ The other doctors, in so far as they testified with reference to appellee's condition, while they differed among themselves as to the extent or percentage of appellee's permanent partial disability, did not differ with reference to the fact that he had suffered permanent partial disability. And while there was some evidence that conditions such as appellee suffered from ordinarily tended to get better, there was no testimony but that appellee was permanently disabled, and each doctor gave his own estimate of the extent of such disability. We are unable to see that any issues of fact were raised by the evidence that appellee sustained temporary partial incapacity, or that the percentage of partial incapacity would decrease in the future outside of the range of the estimate of the respective doctors as to the extent of the permanent partial disability. We therefore overrule the second ground relied on by appellant for reversal.

■ We have fully considered the third ground urged by appellant for reversal. In connection with the court's charge the term "partial incapacity" was correctly defined. And under the authority of Traders & General Ins. Co. v. Pat-

574

terson, Tex.Civ.App., 123 S.W.2d 766, 768, 769, it was not error for the court to refuse appellant's specially requested "Special Issue No. N." And the court having applied the prescribed formula, the judgment rendered for appellee cannot be held to be excessive, and the assignment urged on such ground is overruled.

The judgment of the trial court ought to be affirmed, and it is so ordered.

Affirmed.