ASSOCIATED INDEMNITY CORPORATION V. LEWIS P. MCGREW.

No. 7797. Decided March 18, 1942.
Rehearing overruled April 15, 1942.
(160 S. W., 2d Series, 912.)

*Vinson, Elkins, Weems & Francis,* and *C. M. Hightower,* all of Houston, for plaintiff in error.

Where the evidence raised issues of fact that a compensation claimant suffered temporary partial disability it was error for the trial court to refuse to submit to the jury, upon timely request by the compensation insurer, issues calling upon it to determine whether or not the claimant suffered temporary partial disability. Southern Underwriters v. Wheeler, 132 Texas 350, 123 S. W. (2d) 340; Texas Indemnity Co. v. Head, 89 S. W. (2d) 283; Southern Underwriters v. Stubblefield, 108 S. W. (2d) 557.

*Masterson & Bryan,* of Angelton, and *E. B. Pickett, Jr.,* and *Bradford Pickett,* both of Liberty, for defendant in error.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

Lewis P. McGrew filed this suit against the compensation insurance carrier, Associated Indemnity Corporation, hereinafter called defendant, in appeal from an award of the Industrial Accident Board of compensation for injuries received by him on December 8, 1937, while working on an oil well

floor as employee of Smith & McDannald. The defendant pleaded a general demurrer and a general denial. Trial was before a jury, which in response to four special issues found that (1) as a result of his injuries McGrew suffered total incapacity to work, (2) which would continue for 104 weeks from the date of his injury, and that (3) at the end of his period of total incapacity he would suffer a partial incapacity (4) of 60 per cent. Judgment was entered in accordance with the verdict and defendant appealed to the Court of Civil Appeals, at Galveston, which affirmed the same. See 142 S. W. (2d) 567.

The writ of error was granted on two points, which complain of the refusal of the trial court to give two requested special issues, one as to whether McGrew's partial incapacity was temporary, the other as to when his partial incapacity would cease. The Court of Civil Appeals held that refusal of the issues was proper because there was no evidence that McGrew had sustained temporary partial incapacity, the only issue raised by the testimony being as to the percentage of his permanent partial incapacity.

■ Citing Wright· v. Traders & General Insurance Co., 132 Texas 172, 123 S. W. (2d) 314, that court properly recognized the rule to be that a general denial raises the issues of partial incapacity and whether the same is permanent or temporary, provided (1) such has been pleaded by the plaintiff and (2) there is evidence that the partial incapacity is only temporary. Here the issue clearly was raised by the pleadings, so we have only to determine whether there was any evidence thereon.

Other than the testimony of the plaintiff and that of one Johnson, an oil driller testifying to wages, and the stipulations relating to jurisdictional matters, the entire record is devoted to the testimony of seven doctors all relating to plaintiff's injuries and their extent.

Only one of these, Dr. Richter, was tendered by the plaintiff. He first saw plaintiff to treat him in October, 1938, made X-rays of his back, found injuries to the backbone and testified his opinion was that plaintiff was totally and permanently disabled. The other six doctors were tendered by the defendant. Of these, Dr. Gates saw plaintiff the day after he was injured and then every day until he left the hospital nine days later and thereafter on December 24 and 28, 1937. His opinion was that within four months after December 28, 1937, the plaintiff

would be able to do the same labor that he had done before his injury and without any further disability.

If the defendant had rested with Dr. Gates it would have issues as to temporary partial incapacity, but, with commendable frankness, it called five other doctors who had examined plaintiff, and by their testimony it took those issues out of the case. They were Drs. Dunnam, Kreimeyer, Cowart, Barnes and Harris.

Dr. Dunnam saw plaintiff January 4, 1938, X-rayed him the next day and in collaboration with his partner, Dr. Kreimeyer, treated him until the latter part of 1938. Plaintiff was Dunnam's private patient, but his services were paid for by the defendant, which consented to plaintiff's hospitalization on April 16, 1938, and paid for an operation on his knee by Drs. Dunnan and Kreimeyer on April 21, 1938, just one week before the time Dr. Gates said he would be fully restored. Dr. Dunnam saw plaintiff thereafter but did not treat him further, leaving that to Dr. Kreimeyer. Dr. Dunnam swore, in response to questions from defense counsel, that in his opinion the plaintiff would be totally disabled for about one year after April 21, 1938, and would thereafter suffer from 40 to 50 per cent. partial permanent disability. Dr. Kreimeyer treated plaintiff up to July 11, 1938, at which time he examined X-ray pictures that day made of his injuries. He said plaintiff's knee injury was well but that there was no change in the back injury. He testified as his opinion that plaintiff would be totally disabled for one year after December 8, 1937, and would suffer a permanent partial disability thereafter from 40 to 45 per cent. Dr. Cowart examined plaintiff in March, 1938, and examined X-ray pictures, which disclosed a fracture of the transverse processes of the spine and a knee injury. He said plaintiff would have some partial permanent disability and that the usual backbone fracture disability is from 5 to 15 per cent, but, in response to questions by defense counsel, taking "all of the injuries that you found, and based upon your examination and your findings and your experience as a surgeon with all of the injuries combined as to his general efficiency," he testified that plaintiff's permanent partial disability would be "anywhere from twenty to thirty per cent." He though plaintiff would be totally disabled for six or eight months from the time he saw him. Dr. Barnes, formerly an official examiner for the Industrial Accident Board, examined plaintiff by agreement of both parties, on May 24, 1939, nearly

thirteen months after Dr. Gates said he would be free of any incapacity to labor, and found that he had permanent disability "as applied to his general efficiency of from 15 to 25%," that his efficiency was thus impaired because of his "partially rigid spine." The fifth of defendant's expert witnesses was Dr. Harris, who X-rayed the plaintiff on May 24, 1939, at the request of Dr. Barnes. Neither side asked him about permanent partial disability but in response to a question from defense counsel he said he had never known of a similar case to result in total permanent disability.

■ Thus it results that the defendant proved the opinion of one expert witness that all plaintiff's disability would end by April 28, 1938, then flatly contradicted and disproved that opinion by at least four other witnesses whom it put on the stand and for whom it vouched as worthy of full credence and all of whom swore, after personal examinations later made of plaintiff's injuries, that he would suffer varying degrees of permanent partial disability. These other witnesses, by observation and examinations made months after Dr. Gates last saw the plaintiff, acquired a knowledge of a factual situation which utterly destroyed the probative force of the opinion testimony of that witness. With the matter thus fully concluded and the issue resolved against it, the defendant cannot be heard to say that there was any issue as to temporary partial disability. There was none.

What we have said likewise disposes of defendant's points of error on the refusal of the trial court to submit an issue as to whether the plaintiff suffered any partial incapacity and as to when the same, if any, began, the jury having found that his total incapacity would continue for 104 weeks.

Other points urged by the defendant relate to the computation of McGrew's average weekly wage. Since he had not at the time of his injury been working in the same employment for substantially the whole of the immediately preceding year, the courts below properly recognized that plaintiff's wages could not be computed under subdivision 1, of Art. 8309, R. S. 1925, so they computed it under subdivision 2, that is, by taking the average daily wage of an employee of the same class working substantially the whole of the year preceding the plaintiff's injury, multiplying it by 300 and dividing the product by 52 to get the average weekly wage under subdivision 5. We think this method was correct. One T. O. Johnson was the em-

ployee. He testified, without dispute, that he worked in Hastings as a member of the drilling crew from the first part of January, 1937, until just before Christman (beyond December 8, the day plaintiff was injured), that for the first part of 1937 he got $7.00 per day but along in February or the first part of March he began getting $8.00 per day, that he worked seven days a week and every two weeks or twenty days would make up one day as overtime. From this testimony the trial court took $7.50 as the average daily wage and allowed plaintiff the maximum of $20.00 per week for 104 weeks of total incapacity since 300 times $7.50 divided by 52 gives a quotient of $43.26, more than the maximum allowed under Art. 8306, subdiv. 10. Then he took 60% of $43.26, as the difference between plaintiff's earning capacity before the injury and what it would be after his 104 weeks of total incapacity would cease and awarded plaintiff 60% of that under section 11, of Art. 8306, supra, which equals $15.57, for a period of 297 weeks, as compensation for his partial incapacity. Taking Johnson's testimony in the light most favorable to defendant by assuming his $8.00 per day pay began on March 16, there were 268 days up to December 8 for which he was so paid. Adding overtime at 1 day for each 20 days (rather than for each two weeks) he earned 13 days giving him a total of 281 days for which he got $8.00 per day. Clearly he had worked as many as 19 days before March 16 at $7.00 per day, so it is apparent that the trial court in taking $7.50 as the daily wage fixed it lower than the testimony required. Therefore, the defendant has no just complaint. Fidelity Union Casualty Co. v. Carey et al (Com. App.), 55 S. W. (2d) 795, affirming 38 S. W. (2d) 169; Petroleum Casualty Co. v. Williams (Com. App.), 15 S. W. (2d) 553.

This also disposes of defendant's complaint about the method of computing the compensation for McGrew's partial incapacity, otherwise the language of sec. 11, Art. 8306, that his compensation shall in no case exceed $20.00 per week would be meaningless, in view of the fact that the maximum for total incapacity under sec. 10, of the same article, is $20.00 per week. See Siller v. United States Fid. & Guar. Co. (Civ. App), 93 S. W. (2d) 529; Traders & Gen. Ins. Co. v. Patterson (Civ. App.), 123 S. W. (2d) 766; Federal Underwriters Exchg. v. Price (Civ. App.), 145 S. W. (2d) 951; and Texas. Emp. Ins. Ass'n v. Reed (Civ. App.), 150 S. W. (2d) 858, in each of which application for writ of error was dismissed.

There is no merit in the contention that the question of average weekly wage should have been submitted to the jury. Johnson apparently was a disinterested witness and, as defendant says in its petition for writ of error, his testimony was undisputed. So, it presented no issue for the jury. Casualty Reciprocal Exchange v. Stephens (Com. App), 45 S. W. (2d) 143.

We think all other propositions were properly disposed of by the Court of Civil Appeals so we purposely do not discuss them.

Therefore, the judgment of the Court of Civil Appeals affirming the judgment of the trial court should be affirmed, and it is so ordered.

Opinion adopted by the Supreme Court March 18, 1942.

Rehearing overruled April 15, 1942.