**TRAVELERS INS. CO. v. CALCOTE.**
No. 14863.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 26, 1947.

Rehearing Denied Oct. 24, 1947.

H. M. Muse, of Wichita Falls, and Thompson, Knight, Harris, Wright & Weisberg and Pinkney Grissom, all of Dallas, for appellant.

Kearby Peery and Clyde C. Fillmore, both of Wichita Falls, for appellee.

HALL, Justice.

This suit was originally filed in the 30th District Court of Wichita County, Texas, by the Travelers Insurance Company to set aside an award of the Industrial Accident Board in favor of Claude Roy Calcote.

At the termination of the jury trial, the court entered a judgment, based upon the jury findings, in favor of Calcote, for the total and permanent loss of his right foot. The company perfects this appeal, assigning 16 points of error. We will confine our discussion of these points in the same group form as briefed by appellant and discussed by appellee.

The first group covers points 1, 2, 3, 4, 5, 11 and 12, which pertain to the subject of whether the trial court properly submitted issues to the jury to determine the proper compensation rate or to determine the average weekly wage or the average daily wage that should have been the basis of Calcote's recovery. It is the contention of appellant that appellee was not entitled to have the question of his weekly wage submitted under the compensation law, sub-section 2 of section 1, of art. 8309, Vernon's Ann.Civ.St. for the reason of the failure on his part to have first shown that he was not entitled to have his weekly wage computed under sub-section 1, of the same section. The facts show that appellee was injured on his second day's employment with General Mills, that he was working as a laborer for the sum of 55¢ per hour, and had not worked sufficient time to qualify himself to receive the basic wage of common laborers. The facts further show that appellee, prior to the time he went to work at General Mills, had worked on his father's farm as a common laborer, that he had practically no education, was not skilled, and that most of his labor was done on his father's farm, except for two weeks wherein he worked in a cafeteria during the war. Appellant's contention is that appellee proved by his own testimony that he had labored at the same kind of work he was engaged in, at the time of his injury, substantially for the whole of the year immediately preceding his injury, even though he had worked on this particular job for less than two days. The facts further relate that he was injured while pushing a hand truck loaded with flour, the same turning over on his ankle and crushing it. The facts further show that the farm on which appellee worked prior to the time he worked for General Mills was located some 120 miles from the scene of the accident. The argument of appellant is to the effect that all common labor should come under the same schedule, regardless of what type or character it may be or where it may have been performed. We cannot find, nor are we referred to any authorities supporting this contention. Farm labor does not even come under the Act. No doubt, it is a substantially different class and type of labor than that of working in a mill, and the wage rate is not shown to be the same.

This group of points cover the general complaint of appellant that the case should not have been submitted under sub-section 2 of art. 8309, Vernon's Ann.Civ.St., because there was no evidence of the average wage or salary of an employee of the same class working substantially the whole of an immediately preceding year in the same or similar employment and in the same or neighboring place. We also disagree with appellant on this point. The testimony shows that one E. L. Ward, who was working as a sweeper in the mill, worked for more than 340 days, being the year immediately preceding the injury, for which he was paid the sum of $2,029.80, which includes $40.80 for two weeks paid vacation. Appellant's contention is that since Ward worked more than a year, appellee was not entitled to have his wage computed under sub-section 1, 2, or 3, of section 1, art. 8309, supra, but does contend that Ward's status, since he worked more than a year, should be calculated by adding all of his wages together

and dividing by 52, thus the testimony pertaining to Ward's salary comes under a different status than that of a person who had been employed only substantially the whole of the year, and since appellee failed to show that he could not figure his wage under sub-section 1, therefore, he is not entitled to have his wage figured under 2 or 3, or any other provision of the compensation law, hence, he could recover no more than the minimum of $7 per week.

One Charles Aston testified that he was office manager and accountant for General Mills located in Wichita Falls, Texas, where appellee was working at the time he was injured, and that he knew the rate of pay that the plant was paying for common labor at the time of the injury and that the base pay was from 55¢ to 60¢ per hour and that the standard work-week was 40 hours, with time and one half for overtime, and double time on the seventh consecutive day. That during the year from March, 1944, to March, 1945, General Mills had men doing this type of work who worked as much as 300 days out of the year, and that their average weekly wage was $31.20, but that those who worked the seventh consecutive days had an average weekly wage of $40.80. The jury in this case found the average weekly wage to be $33.60, which is ample amount to support the judgment. The facts in the case of Associated Indemnity Corporation v. McGrew, 138 Tex. 583, 160 S.W. 2d 912, show that there was a total of 343 days worked, and that it was proper to take 300 times such average daily wage and divide by 52 to secure the average weekly wage. Therefore, the mere fact that another employee worked more than 300 days would not prevent such wages from being used to calculate the injured employee's wages under sub-section 2 of the Statute, especially where it is shown that the amount received on a 300 day basis is still more than the jury found the wage rate of the injured party to be. The contentions as set out in appellant's above points are therefore overruled.

Returning to appellant's points Nos. 6 and 7, wherein it complains of the trial court's definition of "total loss of the use of the foot", and No. 7, "the error of the trial court in giving in charge the jury its definition of 'partial loss of the use of the foot.' "

The definitions in the charge are substantially as follows:

I. You are instructed that the phrase "total loss of the use of his foot" does not imply an absolute disability to perform any kind of labor, but such incapacity of the foot that it disqualifies a person from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment, requiring the use of said foot.

J. You are instructed that the term "partial loss of the use of the foot" as used in this charge is meant the extent that the injury to the foot, if any, in fact destroys or impairs the ability of the foot to be as efficient or competent for performing the usual tasks of a workman after the injury as it was before; any degree of loss of the use of the foot less than total.

Appellant's contention is that the first definition does not limit Calcote's recovery for the total loss of the use of his foot to the total loss of the physical function of said foot, but provides that he can recover if the incapacity to the foot disqualifies appellee from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment requiring the use of the foot. Appellant also complains of the definition of the partial loss of the use of the foot in somewhat a similar way. It contends that both definitions are not in keeping with the meaning of the Compensation Act; that they do not confine the jury to a determination of the percentage of loss of physical function sustained, and that they are inapplicable to cases brought under the specific injury statute, to wit, Section 12 of the Act, Vernon's Ann.Civ.St. art. 8306, § 12.

The definitions, supra, are almost identical with the definition set out in the case of Traders & General Ins. Co. v. Maxwell, Tex.Civ.App., 142 S.W.2d 685, 690, writ dismissed, correct judgment, wherein there is found a complete and full discussion of the subject matter complained of in appellant's points Nos. 6 and 7. Such contention of the appellant is not sustained

in that case, and accordingly we overrule them here.

Appellant's points Nos. 8, 9, and 10 complain that the evidence was insufficient to support the jury findings to the effect that Calcote had lost the total and permanent use of his foot; that the court therefore erred in entering judgment based upon the jury's answers to such issues. These propositions were also answered against appellant's contention in the Maxwell case, supra. The facts in the Maxwell case are very similar to the facts in this case. Following the general rule that the verdict is entitled to have the evidence reviewed in the light most favorable to it, we note there was sufficient evidence in this case to support the jury finding of total and permanent loss of the use of the foot. The appellee testified that on the day of the injury, he sought and obtained the services of a doctor, who put his right foot and ankle in a cast; that he changed doctors a few days later; that this doctor cut off the original cast and placed another one on his foot; that this cast stayed on his foot for about 10 weeks; that he continued to walk on crutches during this time and for about 2½ months more; that after the first five months of his injury, he began to do small jobs of work such as driving a tractor on a farm, which did not require the use of his foot; that all during this time the foot would hurt him; that he cannot stand on this foot or use it but a short time until it starts aching and produces a grinding feeling; that he can do but very little work that he used to do before his injury; that he can pick cotton, but not nearly so successfully as he used to, and that he cannot chop cotton at all. One of his doctors, to wit, Dr. Parnell, testified that appellee had suffered a fracture of the internal medial maleolus of the right tibia; that he first saw the injured foot on the 10th day of December, 1946, and that he later examined it during the trial; that he made a radiograph of the foot, commonly known as X-ray. He pointed out to the jury that there was a bone formation growth which would cause injury and stiffness to the function of the foot. Still referring to the bones, he said, "This one is injured, and you have new bone formation, and you can see this tip is gone", and he compared it with the left foot, which is normal. He explained the purposes and uses of cartilage between the bones, and that some of the cartilage tissue was torn out and gone. The following questions were propounded to him, "Do you think that Roy Calcote, at the time you examined him yesterday, could do the work of an ordinary workman such as wheeling flour on a hand car for eight hours per day?" Answer, "No, Sir, he sure couldn't." Question, "In your opinion, what would be the result if he attempted to do that?" Answer, "The same as I explained—He could go for a little while and then it would go to swelling up on him. When those joints swell up, it is humanly impossible to endure the pain and work." In answer to another rather long hypothetical question the doctor further testified: "I don't think he will have any improvement to speak of. If he does, it will not be enough to let him do hard work. Now if he is a bookkeeper, he might sit down and figure all day, but he cannot use that foot for anything."

The testimony of Dr. Heymann, who testified in behalf of the insurance company, was conflicting with that of Dr. Parnell, who testified for appellee, pertaining to the disability of the foot in question. His testimony along this line was to the effect that "if the bones are broken and ligaments torn out, I would say that there was about 25% disability, and there are lots of jobs, if you had 25% disability, that you could not hold down." He testified that he saw the appellee for the first time on about July 25, 1946, which was about a year from the time of the accident. He also testified that the injury was confined to the fracture of the medial maleolus tip of the inner ankle bone, and that at the time he saw him, it had healed, but there were a few degrees of limitation of motion in the ankle joint; that he lacked three or four degrees of being able to get the right foot down and up as far as appellee got his left foot. The testimony of other doctors, testifying in behalf of the insurance company, was also in conflict with the testimony produced by appellee. Where there is testimony found sufficient to support the findings of the jury, the judgment shall pre-

vail, even though there is much conflicting testimony to the contrary, and as stated in the Maxwell case, supra: "The fact that the claimant may perform work not requiring use of his leg, such as firing a boiler in the manner here testified to, and that he can walk without the use of cane, crutch or brace, when to do so causes him pain, swelling, inflammation, and further weakening of the knee, of which condition it is testified there is no chance of improvement, does not, as contended, show as a matter of law that he has not suffered permanent total loss of the use of the leg within the meaning of Article 8306, Sec. 12", citing cases. We therefore overrule appellant's propositions Nos. 8, 9, and 10.

Appellant's points of error Nos. 13 and 14 complain of the trial court in rendering judgment in favor of J. R. Calcote, the father of the minor claimant, instead of the minor claimant. Point No. 14 complains of the trying of the case and the entering of the judgment without having appointed a guardian ad litem to represent the minor defendant, it being admitted that appellee was a minor at the time of the trial of the case, without lawful guardian. Appellant appealed from the order of the Industrial Accident Board by filing this suit. The employee filed a cross-action to recover compensation. During the course of the trial it developed that he was a minor, and the statement of facts reflects an agreement made in open court between counsel for the respective parties that J. R. Calcote should be substituted as defendant in lieu of Claude Roy Calcote, and that J. R. Calcote should maintain the suit as next friend for and in behalf of Claude Roy Calcote. Neither by way of exception, nor in the motion for new trial, nor otherwise, did appellant make known to the trial court any objection to this procedure, nor to the form of the judgment in this respect.

It is not material, from the standpoint of form, whether the suit for compensation appears to have been brought by the minor through his next friend, or by the next friend for and on behalf of the minor. 23 Tex.Jur., pages 764, 765. The employee, through his counsel, stated in this court, during the argument of this appeal, and also in his written brief, that it was agreeable with him for the judgment to be reformed, in such way, if any, as this court might see fit in order to make it comply with the applicable rules of practice. Although the point has not been mentioned by either side, we may observe here that Section 3, of art. 1994, Revised Civil Statutes, provides as follows: "3. In such cases when a judgment is recovered for money or other personal property the value of which does not exceed five hundred dollars, the court may by order entered of record, authorize such next friend or other person to take charge of such money or other property for the use and benefit of the plaintiff when he has executed a proper bond in a sum at least double the value of the property, payable to the county judge, conditioned that he will pay said money with lawful interest thereon or deliver said property and its increase to the person entitled to receive the same when ordered by the court to do so, and that he will use such money or property for the benefit of the owner under the direction of the court."

The rule applicable when the judgment amounts to more than $500 is clearly stated in 23 Tex.Jur., pages 781, 782: "But if it should exceed such amount, the judgment should provide that the funds derived from its collection shall be deposited with the clerk of the court to be paid over to the infant's general guardian, if he should have one, otherwise to be paid into court, there to remain until a guardian is appointed, or the infant comes of age."

The judgment of the trial court will accordingly be reformed in such way as to meet the requirements of said rules. Attention of the trial court and of the appellee is directed to Sections 4 and 5, as well as Section 3, of art. 1994.

Appellant also complains because a guardian ad litem was not appointed to represent the employee in the trial court. In view of what was done concerning the appointment of J. R. Calcote to act as next friend for the employee in said suit, and in view of the fact that the employee occupied a status similar to that of plaintiff in pursuing the claim for compensation, even though the insurer filed suit in court by

way of appeal from the action of the Board, we perceive no reversible error in this respect. Art. 8306, Sec. 13; Rule 44, Rules of Civil Procedure; Wygal v. Myers, 76 Tex. 598, 13 S.W. 567.

Not having raised the above questions in the trial court, and not having laid a proper predicate for assignments of error in this court by corresponding assignments in the motion for new trial, appellant is not in position to complain of the matters just discussed, and we reform the judgment only because of appellee's agreement that it may be done. In such situation, appellant is not entitled to the costs of appeal.

Appellant's propositions Nos. 15 and 16 complain of a conflict in the jury's findings. The jury answered Special Issue No. 5 and 6 to the effect that Calcote suffered total and permanent loss of his foot. In No. 8 it found that plaintiff suffered no partial loss of the use of the foot. In No. 9 and 10, it found that such partial loss of the use of the foot, would be 100%. Appellant's theory is that since the jury answered that such partial loss of the use of the foot is 100%, that such finding is in conflict with the further finding that total loss of the use of the right foot would be permanent. This argument was answered against appellant's contention in the case of Traders & General Ins. Co. v. Milliken, Tex. Civ.App., 110 S.W.2d 108. See also Hartford Accident & Indemnity Co. v. Harris, Tex.Civ.App., 152 S.W.2d 857, writ dismissed.

The jury has found by a preponderance of the evidence that the appellee was an employee of General Mills Inc. on the date of the injury; that he suffered an injury to his foot while in the course of his employment with General Mills; that such injury was the result of an accident; that such injury resulted in the total loss of the use of his right foot; that the date of such total loss began on March 5, 1945, the date of the injury; that such total loss will be permanent; that it will not be temporary; that he did not suffer any partial loss of the use of his right foot; that such partial loss, if any, he did suffer will be permanent; that the percentage of such partial per-

manent loss of the use of the right foot is 100% and that the partial loss of the use of the right foot, if any, will not be temporary; that appellee had not worked for substantially the whole of the year; but that another employee had so worked; that the average weekly wage of such employee was the sum of $33.60; and we find no error in the assignments presented by appellant.

The judgment of the trial court is reformed, and as reformed, is affirmed.