**CONSOLIDATED CASUALTY INSURANCE COMPANY, Appellant,**

v.

**J. R. NEWMAN, Jr., Appellee.**

No. 6926.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 28, 1957.

Rehearing Denied March 28, 1957.

Baker, Botts, Andrews & Shepherd, Charles L. Tigue, Frank G. Harmon, Houston, for appellant.

Dixie, Ryan & Schulman, Al Schulman, Houston, for appellee.

DAVIS, Justice.

Cross-plaintiff appellee, J. R. Newman, Jr., alleged that he received a back injury on November 13, 1952, while employed by Sinclair Refining Company at Pasadena, Harris County, Texas. Cross-defendant appellant, Consolidated Casualty Insurance Company, was Workmen's Compensation carrier for Sinclair. Appellee was paid compensation at the rate of $25 per week for total incapacity until and including May 3, 1953. On May 4, 1953, he returned to work for Sinclair. Upon the trial of the case it was stipulated as follows:

"It is stipulated by and between all the attorneys herein, that the plaintiff in this case received an accidental injury within the meaning of the Workmen's Compensation Law of the State of Texas [Vernon's Ann.Civ.St. art. 8306 et seq.], on November 13, 1952,

while acting in the course of his employment with Sinclair Refining Company.

"It is further stipulated and agreed that by virtue of such accidental injury that the plaintiff received as a result thereof total incapacity for a period of time beginning on November 13, 1952, and ending on May 3, 1953, both dates inclusive.

"It is further stipulated and agreed that for such total incapacity, as a result of the accidental injury heretofore mentioned, the plaintiff has been paid in full for all of such total incapacity.

"It is further stipulated and agreed by all the attorneys herein that except for the period above mentioned which it is admitted the plaintiff has been paid, the plaintiff is not seeking and the plaintiff's attorney does not claim he has received any total disability as a result of such accidental injury.

"It is further agreed and stipulated that from any verdict by the jury that there will be deducted from any period of partial incapacity, as submitted, the period of time in August of the amount of compensation which the plaintiff has been paid for that time which he was off.

"It is further stipulated and agreed that a finding by the jury of partial incapacity during the period of approximately eleven days in August of 1953 when he was paid $39.28, that this amount will be deducted from any judgment to be entered for partial disability, if any, when the plaintiff was paid such compensation, and will not constitute any conflict between the jury finding and this stipulation of facts."

It was further stipulated that the average weekly wage at which appellee was entitled to have his compensation computed was $106 per week.

Trial was to a jury which found: That the injury that appellee sustained on November 13, 1952, was a producing cause of partial disability; the partial disability commenced on May 4, 1953; the partial disability was permanent; the percentage of such partial disability was 25%; and, any incapacity or disability sustained by appellee subsequent to November 13, 1952, except that for which he had already been paid compensation, was not caused solely by pre-existing bodily conditions, or injuries, before November 13, 1952. Judgment was entered accordingly and the Insurance Carrier appeals.

We take the following from appellant's brief:

"This appeal is predicated on the following general propositions:

"First, that in this case, involving a general injury, under Section 11 of Article 8306, R.C.S., appellee must prove that his wage-earning capacity after his injury is less than his average weekly wages before the injury. Further, his compensation can only be computed by taking 60% of the difference between his average weekly wage before injury, and his wage-earning capacity while disabled.

"The trial court therefore erred in submitting no issue to determine the facts on which compensation could be determined, and in submitting an issue of percent of incapacity, and computing compensation on a percent finding, over appellant's objection.

"Second, if compensation may be computed in a general injury case on a percent finding, the trial court must instruct the jury of the factors to be considered in determining percent of disability, in the language of the statute. As a result of the trial court's refusal to instruct the jury on such matters, the jury's answer on the percent issue is not supported by the evidence, and does not determine percent

of disability, as that term is used in the Workmen's Compensation Law. Accordingly, Special Issue No. 4, and the jury's answer of 25% is not a valid determination of percent of disability, as such term is used in the Workmen's Compensation Law, and no judgment computing compensation based on such issue and finding can be sustained."

■ Appellant groups five of its six points under the first general proposition, and argues its sixth point under its second general proposition. Appellant's Point 2 does not exactly fit into the first general proposition, because it complains of the action of the trial court in entering judgment for appellee and contends that there was no evidence to support a finding of 25% partial disability. The point is without merit and is overruled.

By the remaining four points out of the first five, appellant complains of the form of special issue submitted by the trial court which inquired of appellee's percentage of partial disability as the result of the injury, rather than inquiring as to appellee's percentage of wage-earning capacity after the injury. And in an able and diligent effort, appellant has endeavored to point out how it has been injured by the form of such submission. We recognize the fact that a few early authorities support the contention of appellant, one case being Traders & General Ins. Co. v. Hicks, Tex.Civ.App., 94 S.W. 2d 824, which case was discussed in Texas Employers Ins. Ass'n v. Spivey, Tex.Civ. App., 231 S.W.2d 760, wr. ref., NRE; although, the holding in the Spivey case supports the action of the trial court in this case. And, the holding in the Spivey case followed that of Traders & General Ins. Co. v. Robinson, Tex.Civ.App., 222 S.W.2d 266, wr. ref. The holding in the Robinson case was followed in Gulf Casualty Co. v. Jones, Tex.Civ.App., 290 S.W.2d 334, wr. ref., NRE. To the same effect are the following cases: Associated Indemnity Corp. v. McGrew, Tex.Civ.App., 142 S.W.2d 567, affirmed 138 Tex. 583, 160 S.W.2d 912; Associated Indemnity Corp. v. Potts, 5 Cir., 164 F.2d 1002; Siller v. U. S. Fidelity & Guaranty Co., Tex.Civ.App., 93 S.W.2d 529, wr. dism.; American General Ins. Co. v. Bailey, Tex.Civ.App., 287 S.W.2d 290, wr. ref., NRE; Traders & General Ins. Co. v. Patterson, Tex.Civ.App., 123 S.W.2d 766, wr. dism.; Pacific Employers Ins. Co. v. Brasher, Tex.Civ.App., 234 S.W.2d 698, wr. ref., NRE; Federal Underwriters Exchange v. Price, Tex.Civ.App., 145 S.W.2d 951, wr. dism., judgm. correct.

■ Appellant contends that in none of above cases cited in support of the judgment of the trial court an objection was made to the form of submission of the charge by the court, nor request made that the issue be submitted based upon the average weekly wage-earning capacity of the employee after the injury. Although this may be true, a careful study of the authorities clearly reveal the pattern that has been more recently fixed for the trial courts to follow in the submission of such issues, and to attempt to change it now would do nothing but create confusion and probably add to the delay in disposing of litigation. This we are not willing to do. It is undisputed in this case that appellee returned to work on May 4, 1953, at the same rate of pay he was receiving on the date of the injury and subsequently received a raise in pay on two different occasions prior to the date of the trial. But, the hourly and daily work-sheet offered into evidence by appellant reveals that much time was lost by appellee, and the testimony shows quite a bit of the time lost was caused by the injury, and he has never been able to do the same type of work since the injury that he could do prior to the injury. Appellee was employed as a welder and did all the work necessary or incident to his employment prior to the injury which work necessitated much heavy lifting. Since his return to work on May 4, 1953, he has still been welding, but he has not done any heavy lifting and cannot do welding where he must stoop over very long at a time or have his body in any form of strained position. The mere fact

that a workman worked and earned the same, or more, money after sustaining an injury is not conclusive on the issue of the workman's incapacity to perform labor under the Workmen's Compensation Act, but is evidentiary only, and is to be considered along with the other evidence in the case. Texas Employers Ins. Ass'n v. Evers, Tex. Civ.App., 242 S.W.2d 906, wr. ref. That is exactly what was done in the case at bar.

One of the doctors who specialized in orthopedic surgery described appellee's condition as follows:

"A. Yes, sir, * * * and the main examination was in the back, and there was some flattening of the normal curve in the back, and there was a healed scar over the lower portion of the back where he had had an operation, and no tenderness over the spine proper. He had some limitation of motion of the back, he could not bend forward more than 35 degrees, and backwards only 15 degrees, and bending to the right and to the left side was normal. There was some tightness when the left leg was brought straight up from the table, and he was unable to bring it completely straight up, he could do so on the right. There was some *dimunition* or some lessening of the reflexes in the left heel as compared with the right heel reflexes."

This doctor fixed appellee's partial disability at 25%. A doctor testifying for appellant, a specialist in neuro-surgery, fixed appellee's disability at 10 to 15 per cent. (We will note here that there is no contention that appellee's partial disability is not permanent.) This doctor frankly confesses

that if he was appraising appellee's disability to do work that would entail heavy lifting, or hard manual labor, that he would have to increase the percentage of disability above that which he had expressed in his opinion.

From the testimony of both of the doctors, it is seriously doubtful that appellee could pass a physical examination for employment as an ordinary worker; and could not pass a physical examination for employment as a hard manual laborer.

We have carefully examined the record in this case and have concluded that the trial court followed the majority rule of the opinions of the courts of this state in the submission of the issues to the jury in this case, and that the evidence fully supports the findings of the jury thereon. We further conclude that the evidence is not such that, in our opinion, a different verdict would have been reached had the issue been submitted as contended for by appellant. We also conclude from the evidence in the case that no injury is shown in the form of the submissions. Recognizing and adhering to the well-established rule in Texas that the Workmen's Compensation Act will be liberally construed in favor of the injured claimant, Bailey v. American General Ins. Co., Tex.Civ.App., 279 S.W.2d 315, we adhere to the form of submission of the issue as used by the trial court and appellant's points are overruled.

Appellant's Point 6, under its "second" general proposition, is without merit and is respectfully overruled. See Texas Employers Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000.

The judgment of the trial court is affirmed.