**Emmett F. SMITH, Appellant,**

v.

**CONSOLIDATED CASUALTY INSURANCE COMPANY, Appellee.**

No. 12914.

Court of Civil Appeals of Texas.

Galveston.

April 19, 1956.

Rehearing Denied May 31, 1956.

Dixie, Ryan & Schulman, Smith & Lehmann and M. A. Lehmann, Houston, for appellant.

Frank G. Harmon and Charles L. Tighe, Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellee.

CODY, Justice.

Plaintiff, an employee of the Sinclair Refining Company, brought this suit to recover further benefits from defendant, the compensation carrier for the Sinclair Refining Company. In the course of his employment, plaintiff stuck a nail in his foot on September 24, 1953. He was promptly given a tetanus shot at his employer's first aid station. A week later he developed a severe reaction. Plaintiff alleged that this reaction resulted in a partial permanent disability, and sought to recover compensation benefits therefor. At the conclusion of plaintiff's evidence, in response to defendant's motion, the court directed a verdict for defendant, apparently on the ground that the undisputed evidence established that when plaintiff returned to his job it was at the same wage rate, and that he thereafter continued to earn the same or greater wages, up until the time of the trial.—From the judgment rendered against him, plaintiff predicates this appeal upon three points, which urge in substance:

(1) The evidence was sufficient to raise a fact issue on whether plaintiff was partially disabled, either permanently or temporarily,

(2) That there was substantial evidence to the effect that, after his injury, plaintiff was not able to do hard labor, but worked under the whiplash of economic necessity, and

(3) That the fact plaintiff continued to work after the accident at the same rate of pay, and earned the same or more wages as before his injury was only evidentiary on whether his earning capacity had been diminished, and not conclusive.

Defendant's first three counter-points urge that there was no evidence to prove that plaintiff had suffered any disability except for the seven weeks during which he was paid compensation benefits, and in such counter-points defendant traverses plaintiff's points. Defendant's fourth point reads that the court "did not err in instructing a verdict for the defendant since the evidence was insufficient to raise a jury

issue that the injury and tetanus reaction were a producing cause or permanent aggravation of any arthritic condition or physical disability of the plaintiff at the time of trial and in the future."—We sustain plaintiff's points, and rule that plaintiff made out a case to go to the jury.

■ For the purpose of passing on whether the court erred in directing a verdict for defendant [i.e., in sustaining a demurrer to plaintiff's evidence], the evidence must be considered in the light most favorable to plaintiff, and all reasonable inferences in favor of plaintiff must be indulged.[1] So considered, the evidence was to this effect:

■ About a week after the accident, plaintiff developed a severe reaction, with severe pain all over his body, his joints ached and he had muscle spasms and was very nervous. The day following the accident he went to see Dr. Mock, who lived at La Porte, where plaintiff lived. Dr. Mock, after giving him a treatment, got in touch with the Sinclair Refining Company's physician to see if he wanted to take over, but since Dr. Mock had started the treatment and since plaintiff lived in the same town with Dr. Mock, the company's physician suggested that Dr. Mock continue to act as plaintiff's physician. After laying off from work for some seven weeks, for which period the defendant paid the full compensation benefits for which it was liable, the plaintiff returned to work. Plaintiff had a relapse in January, 1954, with great pain and was unable to control his muscles. Again hives broke out on his body. Plaintiff had another reaction in March, 1954, and remained under his doctor's care until May, 1954. Plaintiff has been taking the medicine prescribed by his doctor every day since the early part of October when the reaction developed, and among the medicines he takes is Codeine for relief of his pain. Plaintiff testified that his condition still bothered him at the time of the trial and since May, 1954, there had been no improvement in his condition.

Plaintiff's job does not require much physical exertion for the most part, but when he has a task which calls for unusual strain, his co-employees assist him. Plaintiff testified that he could move empty barrels but he had to get someone else to move the full ones because he knew that when he undertook to do any heavy work he would cause the pain in his muscles to start up and he would be unable to work. With evident purpose to qualify under the "whiplash of economic necessity" decisions he testified: "A. I have been able to take care of my job, and I do it, I guess, to the satisfaction of the foreman, although I have help on my job, and it is in great pain that I do it and under stress or strain, and like I say, I have to take my medicine out there to keep going. The reason I do this, it is not only me, I probably could lay off when I get into it, but I have a wife and three kids to take care of and it is not me I am thinking about."

It was plaintiff's doctor's opinion that it would take a long time for a complete recovery from the fibromyositis, arthritis, and bursitis which he was suffering from at the time of the trial. It was plaintiff's doctor's further opinion that plaintiff had permanent scar tissue in the soft tissue and around the joints and capsules, and that plaintiff has arthritis that impairs the motion and limits the usefulness of the joints. His physician would not pass him to do hard manual labor.

Defendant acknowledged that plaintiff had received a compensable injury and that in connection with it he had suffered a reaction from the tetanus treatment. It was defendant's contention that the evidence showed without dispute that plaintiff's employment has been reasonably suited to his physical condition and capacity down to the present time and that the evidence further shows that plaintiff will be able to continue

[1]. It is not deemed necessary to cite authority to support this rule. However, see Najera v. Great Atlantic & Pacific Tea Co., 146 Tex. 367, 207 S.W.2d 365, 367.

in such employment. The evidence undoubtedly shows that plaintiff was being paid at the same rate of pay as he received prior to the accident and that he has earned the same or greater wages as he earned before the accident; and defendant strongly urges that the evidence shows that he had been paid during the seven weeks all of the benefits he was entitled to under the Workmen's Compensation Law. The evidence did undoubtedly show that plaintiff had recovered from the reaction from the penicillin shot and was suffering at the time of the trial from arthritis, bursitis or fibromyositis. Plaintiff's physician agreed that such conditions could have developed without the occurrence of the tetanus shot, if it were assumed that plaintiff had a history of having hypertrophic arthritis before receiving the shot. It is unquestionably true that the evidence shows without dispute that plaintiff did have such arthritis in his right knee prior to the accident in question; however, the doctor stated that the severe reaction aggravated plaintiff's condition.

■ In the recent case of American General Insurance Co. v. Bailey, Tex.Civ. App., 287 S.W.2d 290, this Court held that it is not necessary to show an economic loss in order to recover permanent disability benefits, and the fact that the claimant continues to work and earn money after the accident is but a circumstance to be considered in passing upon the fact question of whether or not he suffered incapacity to work. (Citing authorities). In the cited case this Court went on to state, in 287 S. W.2d at page 292, "In support of its contention that in the absence of proof of economic loss there is no evidence of incapacity, appellant relies heavily upon this Court's opinion in the case of Employers Reinsurance Corp. v. Wagner, Tex.Civ. App., 250 S.W.2d 420, writ refused, n.r.e. Some of the language employed by this Court in that opinion admittedly appears to lend support to appellant's contention. We think, however, particularly in view of the action of the Supreme Court upon the writ application, that it must be noted that the order of this Court was one of remand rather than rendition, from which it must be concluded that this Court was passing upon the sufficiency of the evidence rather than the question of no evidence despite the import of the language employed."

■ Apparently the trial court in this case felt bound by the language just referred to in the Wagner case. And the defendant here relies heavily upon the Wagner case. However, the rule that the compensation act, Vernon's Ann.Civ.St. art. 8306, § 1 et seq., will be liberally construed in favor of the injured claimant[2] precludes the adoption of any rule of thumb, or technical test, such as the fact that the claimant continued to earn the same or higher wages, to determine whether the claimant's earning *capacity* had been diminished. See Texas Employers' Ins. Ass'n v. Mallard, Tex.Civ.App., 192 S.W. 2d 302, n.r.e.

We believe no good purpose would be served to further discuss the authorities relied upon and cited by the parties. We must reverse the judgment and remand the case for a new trial. It is so ordered.

Reversed and remanded.

**2.** Bailey v. American General Insurance Co., Tex., 279 S.W.2d 315; Hargrove v.

Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73.