EMPLOYERS REINSURANCE CORPORATION V. HONORABLE WILLIAM M. HOLLAND, DISTRICT JUDGE ET AL

No. A-7837. Decided May 24, 1961
Rehearing overruled July 12, 1961
(347 S. W. 2d Series 605)

*R. H. Whilden* and *C. E. Nadeau*, of Houston, and *Dan Moody, Jr.*, of Austin, for relator.

*Dixie & Schulman, Robert E. Hall* and *W. James Kronzer*, of Houston, for respondent.

MR. CHIEF JUSTICE CALVERT delivered the opinion of the Court.

Respondents' motion for rehearing is granted. The opinions delivered on February 15, 1961, are withdrawn, and the following is substituted as the opinion of the court.

This is an original proceeding in this court in which Employers Reinsurance Corporation, relator, seeks a writ of mandamus to compel Honorable William M. Holland, District Judge of the 127th Judicial District, to enter judgment on the verdict of the jury in Cause No. 517,986, Byrd Baggett, Jr. vs. Employers Reinsurance Corporation, and to set aside his order therein of April 11, 1960, declaring a mistrial.

The case in which the order of mistrial was entered is a workmen's compensation case. The parties stipulated that the average weekly wage of the plaintiff, Baggett, before and at the time of his injury was $100.00. Special issue No. 2 inquired whether the injury sustained by the plaintiff was a producing cause of any partial incapacity of the plaintiff to labor. "Partial incapacity" was defined in the charge as follows:

"It shall mean where an employee by reason of injuries sustained in the course of his employment is only able to perform part of the usual task of a workman, but nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work or is only able to perform labor of a less remunerative class than he performed prior to his injuries, whereby he suffers a depression or reduction in his earning capacity."

The jury answered that it was. The jury thus found that the plaintiff had suffered "a depression or reduction of his earning capacity."

In answer to special issue No. 6 the jury found that the average weekly wage earning capacity during the existence of his partial incapacity was $100.00, exactly the same as his average weekly wage before and at the time of his injury. It follows that if the plaintiff's average weekly wage of $100.00 before and at the time of injury represents, in law, his earning capacity at such times, the jury's answer to special issue No. 6, considered with the stipulation, is in fatal conflict with its answer to special issue No. 2, and the order of mistrial was a proper order.

■ Section 11 of Article 8306, Vernon's Annotated Texas Statutes, reads in part as follows:

"Sec. 11. While incapacity for work resulting from the injury is partial, the association shall pay to the injured employee a weekly compensation equal to sixty per cent (60%) of *the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity* * * *." (Emphasis added).

It is quite clear from the foregoing language of the Workmen's Compensation Act that partial incapacity cannot exist unless the average weekly wage earning capacity after injury is less than average weekly wages before injury.

■ We have long held that the purpose of the Act is to compensate an injured employee, not for the loss of earnings or for the injury itself, but for loss of earning capacity. Maryland Cas. Co. v. Stevens, Tex. Civ. App., 55 S.W. 2d 149, 153, writ refused; Maryland Cas. Co. v. Drummond, Tex. Civ. App., 114 S.W. 2d 356, 360, writ refused; Texas Emp. Ins. Ass'n. v. Clack, 134 Tex. 151, 132 S.W. 2d 399, 401. To ascertain whether there has been a loss of earning capacity, average weekly wage earning capacity during disability must, under the provisions of Section 11 of Article 8306, supra, be subtracted from average weekly wages before injury. If the remainder is to represent extent of loss of earning capacity, necessarily average weekly wages before injury *must* represent, in law, earning capacity before injury. That the Legislature intended that it do so is evident from a careful analysis of the provisions of Section 1 of Article 8309, V.A.T.S., defining "average weekly wages."

Amendment of Section 11 by Acts 1957, 55th Leg., p. 1186, ch. 397, does not require a different holding. There is nothing in the amendment which either states or reasonably infers that "average weekly wages" of an injured employee does not measure and represent his earning capacity before injury. It simply directs that compensation under the Section shall "not be computed on a basis of a percentage of disability," a method of computation theretofore approved by this court in Associated Ind. Corp. v. McGrew, 138 Tex. 583, 160 S.W. 2d 912, and Traders & General Ins. Co. v. Robinson, Tex. Civ. App., 222 S.W. 2d 266, writ refused.

■ We conclude that the jury's answers to special issues Nos. 2 and 6 cannot be reconciled under the test applied in Bradford vs. Arhelger, 161 Texas 427, 340 S.W. 2d 772, and the order of mistrial was proper. Writ of mandamus is denied.

MR. JUSTICE SMITH, dissenting.

I respectfully dissent.

Since the present majority opinion now expresses the same views as were expressed in the original dissent written by the Chief Justice, I now adopt my original opinion in each of these cases with the following additions.

The holding of the majority is contrary to the statute and amounts to a rewriting thereof. I cannot agree to the conclusion that the jury's answers to special issues Nos. 2 and 6 (Holland) cannot be reconciled. The test in Bradford v. Arhelger, 16 Texas 427, 340 S.W. 2d 772, cannot and does not apply in this mandamus proceeding.

It is our duty to reconcile conflicts, yet, we find this Court depending almost entirely upon the language of the Court's charge instead of the language of the statute. The writer of the present majority in his original concurring opinion even drew a distinction between the two cases merely because of the placement of a comma. My views as to the effect of the present holding are adequately expressed in an amicus curiae brief filed in this Court on January 16, 1961. In the interest of time, I adopt the same and quote as follows:

This Court is asked by Respondents to hold that "average weekly wages before the injury" is the equivalent of "average weekly wage earning capacity," as those terms are used in Sec. 11, Art. 8306, Rev. Civ. St. Tex. 1925. They request this holding notwithstanding that the statute itself defines "average weekly wage" as money actually earned, regardless of capacity to earn from a physical standpoint, availability of work or the numerous other factors affecting actual earnings. See Art. 8309, Sec. 1.

In order to afford Respondents relief, and hold as requested, this Court must:

(1) Rewrite Sec. 11, Art. 8306 and Sec. 1, Art. 8309; and

(2) Require that defendant's counsel argue plaintiff's case.

That this Court must rewrite the statute is clear, for under the provisions of the Workmen's Compensation Act above cited, the terms referred to are not equivalent. Respondents would have the Court substitute "average weekly wage earning *capacity* before the injury" for "average weekly wages before the injury."

Next, let us envision the sort of case presenting this controversy. Counsel have stipulated (or the jury may find) plaintiff's "average weekly wage" during the year immediately preceding the date of injury as $100 per week. There is proof, perhaps uncontroverted, that plaintiff has been regularly and continuously employed for the last several months at a wage of $110 per week. There is further evidence, hotly contested, that plaintiff has done his job well and on his own.

Plaintiff's counsel, in his opening argument to the jury, vigorously asserts that plaintiff was not actually able, i.e., hadn't the capacity, to earn $110 per week in a competitive labor market.

Defendant's counsel now argues to the jury. Must he argue that plaintiff's counsel is right, that plaintiff is in fact unable to earn $110 per week? Must he argue that his own witnesses are wrong? If this Court holds that a jury finding of $110 per week earning capacity during the last several months conflicts with the stipulation, defendant's attorney must so argue. He must argue that his witnesses are wrong, that plaintiff can't earn what he has in fact earned, and request the finding of an amount less than the stipulated wage of $100 per week. Otherwise, a mistrial results. Defendant's attorney is in an intolerable position. He can lose or a mistrial can result—he can't win!

And what of the trial court's position, bearing in mind respondents' continued cries for more speedy disposition of cases. Simply this, that the trial court will retire the jury for further deliberation in the event of inconsistent or conflicting findings in the usual case, thus avoiding a complete retrial of the cause. But if respondents' request is granted here, the trial court cannot do so. How can the trial court, without committing error, advise a jury that its finding of wage earning capacity during the period of partial incapacity is greater than some stipulation of average weekly wage of which the jury is not aware, and that they must therefore find some lesser amount? It cannot!

The result—the case must be tried again, with attendant expense to the courts and the litigants. And unless defendant's attorney argues plaintiff's case, the case must be tried again and again. Of course, plaintiff's counsel understandably desire such a ruling, but I submit that a ruling which produces this illogical result, and strikes to the heart of our adversary system of jurisprudence, would be insupportable.

A jury, in answering the special issues submitted to it on trial of a Workmen's Compensation case, finds among other things, the plaintiff's average weekly wages before the injury. This is defined for them in accordance with the definition of that term set forth in Section 1 of Article 8309, Revised Civil Statutes of Texas. Reference to that provision of the statute will show that by definition that term refers to money which the employee *"shall have earned"*, or which another employee *"shall have earned"*. Additionally, the jury determines the *average weekly wage earning capactity* during the period of partial incapacity. Conceivably, either or both of these two issues may be resolved by stipulation. But however they are resolved, the issue in the one instance deals with *earnings* and in the other instance with *capacity*. The two are not the same and could not possibly conflict.

For many years plaintiff's counsel in compensation cases have argued, and the Courts have uniformly sustained, the proposition that a man's earning capacity may be less than his actual earnings (Smith v. Consolidated Cas. Ins. Co., 290 S.W. 2d 589); by the same token he may have the capacity to earn substantially more than his actual wages. In other words, plaintiff's counsel have for years argued that earning capacity and actual earnings are not the same, when arguing the question of disability. If earnings do not equal earning capacity, as this Court has held, then it follows that earning capacity does not equal earnings. The latter proposition is the entire premise upon which the alleged conflict rests. The employee's earning capacity while disabled must be less than his earning capacity prior to injury, but the jury does not pass on his earning capacity prior to injury. Instead, the jury finds *"his average weekly wages before the injury* and his *average weekly wage earning capacity* during the existence of such partial incapacity"*. Article 8306, Sec. 11 (Emphasis added). The two are not always the same.

The earnings of an employee are influenced by many factors which do not affect his earning capacity. For example, the

earnings of an employee engaged in the building trades may be influenced by the weather, labor disputes, and many other factors over which he personally has no control. In such an instance, the employee's wage earning capacity is not affected, while his actual earnings may well be.

The employee's average earning capacity before the injury is not equivalent to his average weekly wages prior to injury. Earning capacity corresponds to, but is not limited to, wages actually earned. Clearly then, the employee's average weekly wage earning capacity may be diminished by injury, but remain greater than his average weekly wage earning.

The 1957 amendment to Art. 8306, Sec. 11 would be nullified by holding a conflict exists.

Prior to 1957, Article 8306, Sec. 11, of the Workmen's Compensation Law was as follows:

"Sec. 11. While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than Twenty-Five Dollars ($25) per week. The period covered by such compensation shall be in no case greater than three hundred (300) weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of injury."

Despite this rather specific statutory language, the Court submitted the the issue of partial incapacity in terms of percentage of physical incapacity. Under this interpretation, no issue was submitted concerning the employee's average weekly earning capacity during the period of disability, and the fact that the employee earned as much or more money while disabled than he had averaged for the past year was only some evidence on the issue of percentage of incapacity.

In 1957, the 55th Legislature amended Article 8306, Sec. 11, by adding the following sentence:

"Compensation for all partial incapacity resulting from a general injury shall be computed in the manner provided

in this Section, and shall not be computed on a basis of a percentage of disability."

The Legislature's obvious intent in amending this Section was to reject the interpretation put on it by the Courts and to return to the method provided by the statute. In rejecting the percentage of disability method, the Legislature also rejected the Court's determination that "average weekly wages" was equivalent to average weekly wage earning capacity, under the Act. This is the only possible reason for rejecting the method of computing compensation by percentage of disability. If "average weekly wages" and average weekly wage earning capacity prior to injury were synonymous, the percentage of disability method of computing compensation and the statutory method would both give the same figure.

Respondents, who opposed this Amendment in the Legislature, now ask this Court to destroy the Amendment, having lost their legislative battle. They are more subtle, but the purpose is obvious!

Assuming that the present majority is essentially the same as the original dissent (Holland), the question recurs: In the actual application of Section 11, Article 8306, are "average weekly wages before the injury" and "his average weekly wage earning capacity during the existence of such partial incapacity" one and the same? The question is presented within the framework of a determination whether jury findings are in irreconcilable conflict and of course the question should be approached within this framework.

I repeat it is a basic principle that it is the duty of the court to reconcile allegedly conflicting findings if it is possible to do so. In the face of this basic principle, however, I find the majority in the Holland case taking the position that the legislature must have intended average weekly wage to equal average weekly wage earning capacity because, under subdivision 2 of Article 8309, the legislature said that A's average weekly wage earning capacity (even if he was a double amputee) was "what some other person had earned." In other words, the majority says in support of its position that what Mr. Jones actually made in dollars and cents is the equivalent of Mr. Smith's physical earning capacity. I submit that this is not an attempt to reconcile supposedly conflicting jury findings and that the necessity for such a position to support another proposition is some indication of the weakness of the latter.

Whether there be a comma, semi-colon, or a total absence of any mark of punctuation, in the definition of partial incapacity used by a particular trial court, it must be admitted that to sustain respondents' position in this cause will require the Court to add the word "incapacity" to the statute (Sec. 11, Article 8306) as written by the legislature, and that in so doing the Court is stepping beyond its province. The majority opinion does just this—in substance, the majority says that the purpose of the statute is to compensate for diminished earning capacity, referring to its decision in *Clack*, and the legislature having done a poor job in writing the statute to effectuate the purpose of the statute as announced in the Clack decision, it must be revised or rewritten. There is no escape from the conclusion that if respondents' position is sustained, that Section 11 of Article 8306 will have been as effectively rewritten as if the legislature, by House Bill No. 1, had amended the Statute to insert the word "capacity" in the statute.

As the statute now reads, average weekly wage is not the same as average weekly wage earning capacity; they will be the same only if this Court is willing to in effect amend the statute to provide what it believes the legislature should have provided.

An able amicus curiae brief has been filed by the Honorable Albert Jones in behalf of the respondents. I greatly appreciate his tribute in citing the case of Bailey v. American General Insurance Co., 154 Tex. 430, 279 S.W. 2d 315. I cannot, however, see where it has any place in the consideration of this conflict question. The Bailey case does adhere to the rule of liberal construction in workmen's compensation cases, but certainly such rule has no place in determining a conflict question. This Court cannot change the obvious intention of the legislature. If a mistake was made, then I suggest that the legislature is the place to make the corrections.

The following is the original opinion of the Court delivered on February 15, 1961, which now constitutes a part of this dissent:

In this original proceeding, Relator, Employers Reinsurance Corporation, seeks a writ of mandamus to compel the Honorable William M. Holland, District Judge of the 127th Judicial District Court of Harris County, to enter judgment on a verdict returned by a jury in Cause No. 517,986, Byrd Baggett, Jr. v. Employers

Reinsurance Corporation, now pending in that court, and to set aside his order thereon of April 11, 1960, declaring a mistrial and granting a new trial.

This is a workmen's compensation case. The facts are almost identical with those involved in the case of Indemnity Insurance Company of North American v. Honorable Harold Craik, District Judge et al., this day decided. The principles of law announced there are determinative here. However, we feel that in deciding this case we must, in deference to the respondents' contention, carefully analyze the argument and authorities relied upon by the parties.

The controlling question to be decided here is the same as there: Do the jury findings present an irreconcilable conflict? Both cases were tried before a jury and upon motion of the plaintiff in each case, the trial court entered its order declaring a mistrial. The motion for mistrial in this case, as in the other, alleged an irreconcilable conflict between a stipulation[1] that on June 13, 1956, and for substantially the whole of the year immediately prior thereto, the plaintiff's average weekly wage was $100.00, and the finding of the jury[2] that respondent Baggett's average weekly wage earning capacity during the existence of his partial incapacity was $100.00.

Relator contends that no irreconcilable conflict exists. If that contention is correct, it follows that it was the ministerial duty of the trial judge to enter judgment on the verdict. Courts are vested with no discretionary power to set aside jury answers which are responsive to proper issues presented by the pleadings and submitted to the jury by the court. See Gulf, C. & S. F. Ry. Co. v. Canty, 115 Tex. 537, 285 S.W. 296, and Cortimeglia v. Davis, 116 Tex. 412, 292 S.W. 875.

Relator contends that the jury's finding of partial disability can be reconciled with the stipulation that respondent Baggett's

---

[1] "It is stipulated and agreed by both counsel herein that the average weekly wage rate of the plaintiff before and at the time of injury was the sum of $100 per week."

\* \* \* \* \*

[2] "Special Issue No. 6
"What do you find from a preponderance of the evidence to be the average weekly wage earning capacity of the plaintiff, if any, during the existence of such partial incapacity, if any?
"Answer by stating in dollars and cents.
"Answer: $100.00"

average weekly wages before the injury were $100.00 and the jury's finding that respondent Baggett's average weekly wage earning capacity during the period of his partial disability was $100.00. We sustain this contention. We hold that the jury's finding of partial disability is not necessarily a finding of a reduction in earning capacity as contended by the respondents; "average weekly wages" is not and cannot be a measure of earning capacity; "average weekly wage earning capacity" is not the equivalent of "average weekly wages".

Respondents contend that a conflict exists because "partial" incapacity[3] was defined by the court to mean "a depreciation or reduction in his earning capacity", and, therefore, in view of such definition, the jury findings of permanent partial incapacity[4] (a) (b) were necessarily findings that Baggett had suffered a diminished ability to earn as much as he had earned prior to his injuries. Respondents' argument that these findings mean that the wage earning capacity of Baggett, during the period of partial incapacity, had been reduced and, therefore, the finding that "he could earn as much as he had earned prior to the injury" is in irreconcilable conflict with such finding is untenable.

While it is true that "partial incapacity" was defined by the court as above indicated, we point out that the jury did not find, and was not called upon to find, respondent Baggett's wage *earning capacity* at or prior to the accident. The parties did not stipulate as to *earning capacity*. We cannot rewrite the

---

3     "By the term 'partial incapacity' as used herein has the following meaning:

"It shall mean where an employee by reason of injuries sustained in the course of his employment is only able to perform part of the usual task of a workman, but nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work or is only able to perform labor of a less remunerative class than he performed prior to his injuries, whereby he suffers a depression or reduction in his earning capacity."

\* \* \* \* \*

4 (a)   "Special Issue No. 2

"Do you find from a preponderance of the evidence that such accidental injury, if any, was a producing cause of any partial incapacity to labor to the Plaintiff, Byrd Baggett, Jr.?

"Answer: 'We do' or 'We do not'.

"Answer: 'We do'.

\* \* \* \* \*

4 (b)     "Special Issue No. 4

"Do you find from a preponderance of the evidence that such partial incapacity, if any you have found, is or will be permanent or temporary?

"Answer: 'permanent' or 'temporary'.

"Answer: 'permanent' ".

statute. Section 11[5] of Article 8306, Vernon's Annotated Civil Statutes, provides a measure of damages based upon the difference between *average weekly wages* [stipulation] before the injury and the *average weekly wage earning capacity* [jury finding] during the existence of the partial incapacity. A reading of that Article and Section 1 of Article 8309, Vernon's Annotated Civil Statutes, leads to the conclusion that "average weekly wages before the injury" is not the equivalent of "average weekly wage earning capacity". In this case, the parties stipulated as to Baggett's average weekly wage rate at the time of the injury. The definition of "average weekly wage before or at the time of the injury as contained in Section 1 of Article 8309, supra, clearly refers to money which the employee *"shall have earned"* or which another employee *"shall have earned."* The question as to Baggett's average weekly wage earning capacity during the period of partial incapacity was submitted to the jury. Whether these issues are determined by stipulation or by jury verdicts, the fact remains that "average weekly wage" deals with *earnings* and "average weekly wage earning capacity" deals with *capacity*. The word "capacity" does not appear in the definition of "average weekly wages".

Respondents rely upon language used by the court in such cases as Texas Employers' Ins. Ass'n v. Mallard, Tex. Civ. App., 192 S.W. 2d 302, wr. ref. n.r.e.; Smith v. Consolidated Insurance Company, Tex. Civ. App., 290 S.W. 2d 589, wr. ref. n.r.e.; Consolidated Casualty Ins. Co. v. Newman, Tex. Civ. App., 300 S.W. 2d 160, wr. ref. n.r.e., as being authority for their contention that these cases draw a proper distinction between "average weekly earnings" prior to an accidental injury and "wage earning capacity" prior to such injury, "on the basis that *because of an injury a* man may be actually earning in excess of what he could earn if he were competing for employment on the open labor market with other employees of similar skill who had suffered an injury." The respondents go further and claim that

---

5     "While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than Thirty-five Dollars ($35) per week. The period covered by such compensation shall be in no case greater than three hundred (300) weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of injury. Compensation for all partial incapacity resulting from a general injury shall be computed in the manner provided in this Section, and shall not be computed on a basis of a percentage of disability. As amended Acts 1957, 55th Leg., p. 1186, ch. 397, § 1."

the cases of Texas Employers' Ins. Ass'n v. Clack, 134 Tex. 151, 132 S.W. 2d 399; Traders & General Ins. Co. v. Quinn, Tex. Civ. App. (1937), 111 S.W. 2d 859, 861, wr. ref., and Texas Employers' Ins. Ass'n v. Frankum (1947), 145 Tex. 658, 201 S.W. 2d 800, support their contention that "average weekly wages before the injury" was and is the equivalent of "average weekly wage earning capacity". In each of these cases a different question from the one here was involved. However, we fail to find anything in these cases which runs counter to the holding herein made that "average weekly wages before the injury" is not the equivalent of "average weekly wage earning capacity".

The Clack case, supra, was a workmen's compensation case. The principal question decided was the correct formula for determining the average weekly wages of the claimant, Clack. The court discussed at some length five subsections of Article 8309, supra. The claimant had been paid for his services, for the year next preceding the date of his injury, a salary of $122 per month. Section 5 of the Article, provides that "The average weekly wages of an employee shall be one-fifty-second part of the average annual wages." The court under the facts held that—

"This necessarily leads us to hold that where an employee is in the employment of another for the full period of one year prior to an injury, and is paid an annual salary, or a monthly salary for the full twelve months, and if by reason of the nature of the work he is doing, or the rules, regulations or conditions under which he is required to work, he may not actually work as much as 300 days during such year, he shall nevertheless be regarded as having worked substantially the whole of such year, so as to make applicable the rule of dividing his annual salary or earnings by fifty-two in order to determine his applicable weekly wages."

For the reasons stated, we overrule respondents' contention that an irreconcilable conflict exists.

We next consider respondent's contention that since the order of the trial court also granted respondent Baggett's motion for new trial, mandamus is not available to review the discretionary judicial power of the respondent District Judge in granting the new trial. We overrule this contention.

Respondent urges that since the District Judge in addition to ordering a mistrial, granted a motion for a new trial, man-

damus is not available to review the discretionary judicial power of the District Judge to grant a new trial. In support of his position relator relies on Missouri-Kansas-Texas R. Co. of Texas v. Brewster, 124 Tex. 244, 78 S.W. 2d 575. In that case the railroad company presented a motion for judgment in its favor on the verdict. The plaintiff filed his motion for a new trial on the grounds that (1) certain answers were conflicting; (2) and that the answer to two issues were contrary to the preponderance of the evidence. The District Judge overruled the railroad company's motion *only* because of the conflict in the jury's verdict and then granted the plaintiff' motion for a new trial on the same stated ground.

The trial court discretionary power to grant a new trial, of course, is not subject to review. Rule 300, T.R.C.P.; Anchor v. Martin, 116 Tex. 409, 292 S.W. 877. This is true ever though the court grants a new trial after the verdict without first entering a judgment thereon or grants a new trial on his own motion. We are not called upon here to review that discretionary act, but rather to determine whether the court's ministerial act in refusing to enter a judgment on the verdict and granting a mistrial was properly and legally exercised.

In our opinion the Brewster case was incorrectly decided. What the trial court actually did in that case was to enter an order for mistrial regardless of the fact that it was denominated an order for a new trial. In other words, when the court overruled the railroad company's motion for judgment only because of the conflict in the jury's verdict and then granted the plaintiff's motion for a new trial for the same reason, the court in effect was only declaring a mistrial and if the order was proper and effective then a new trial follows as a matter of course and of law without any further order. The application of the railroad for a mandamus in that case should have been reviewed on its merits. Terminology should not control over substance. We are concerned with what the trial court actually did rather than how the order is worded.

In this case the plaintiff filed what was denominated a motion for mistrial. The opening paragraph reads as follows:

> "Now comes Byrd Baggett, Jr., Plaintiff in the above-styled and numbered cause, and moves the Court to set aside the special verdict and findings of the jury returned and ordered filed herein on the 25th day of March, 1960, and

says that the same are conflicting and will not support a judgment for the following reasons:"

Interlined in handwriting following the word "judgment" were these words: "And that a mistrial and a new trial should be granted."

The only ground asserted in this motion was that "the findings are, therefore, in direct conflict and cannot stand together." The motion concluded by praying that all such findings and special verdict be set aside and a new trial be declared.

The order on that motion entered by the judge read in part:

"* * * it is therefore ordered by the Court that said special verdict and findings of the jury be set aside and held for nought, and that a mistrial be declared and that a new trial be granted, * * *."

The motion and the order entered thereon clearly demonstrates that there was presented to the court actually only a motion for a mistrial grounded on conflict. The court only considered and passed on the motion for a mistrial and granted a new trial because of the granting of the mistrial. Under these circumstances the right of the party to have the action of the trial court in granting the mistrial reviewed should not be denied merely because the order added the entirely superfluous words "and that a new trial be granted." When the motion for mistrial is sustained the right to a new trial follows by operation of law.

The mistrial was improperly ordered in this case and judgment should be entered for the defendant on the verdict.

Writ of mandamus should issue as prayed for.

MR. JUSTICE GREENHILL joined by JUSTICES GRIFFIN and CULVER, dissenting.

It is well established that it is the duty of the courts to reconcile the answers of the jury to special issues. Conflicts are to be declared only where the answers cannot be reconciled. I think the answers to special issues here are not necessarily in conflict and can be reconciled.

A cause of action for workmen's compensation and a recovery thereunder are purely statutory. Likewise the measure of recovery is statutory. That measure is plainly set out, in so far as these causes are concerned, in Section 11 of Article 8306 and Subsection 1 of Section 1 of Article 8309.[1] That measure, according to Section 11 of Article 8306 is 60% of "the difference between [1] his average weekly *wages* before the injury and [2] his average weekly earning *capacity*" during the period of the claimant's partial incapacity (brackets inserted). Where a claimant has worked substantially the whole of a year prior to the injury, as the claimant here had, his "average weekly wages" are defined in Subsection 1 of Section 1 of Article 8309 as "300 times the average daily *wages* or salary *which he shall have earned* in such employment * * *." Under this subsection at least, the statute, in defining "average weekly wages" makes no reference to the "capacity" of the claimant.

The statute therefore, to me at least, says the claimants are entitled to the difference between the average of *actual wages* for the preceding year and their earning *capacity* after the injury.

The majority says that a man's actual earnings before injury are his earning capacity. This may or may not be true. Actual earnings after injury do not represent, as a matter of law, earning capacity. *Texas Employers Ins. Assn. v. Frankum* (1947), 145 Tex. 658, 201 S.W. 2d 800, at 802. A man, before injury, may be earning less than his capacity for a number of reasons. Or, in unusual circumstances, he may be earning more than would fairly be regarded as his true earning capacity. Or he may be earning exactly up to his capacity and no more. The jury was not asked, and the statute does not call for an inquiry as to, what the claimant's *capacity* was before injury. It may or may not have been exactly represented in his wages. It is conceivable that a man's capacity to earn was greater than his actual earnings before injury. Then even if he suffers some partial disability, his remaining capacity to earn may equal or even exceed his actual wages before injury. The jury has the right to so find if the facts justify such a conclusion.

As the majority points out, the Workmen's Compensation Act was intended to compensate for loss of earning capacity. The courts drew this intent from the statute. Yet the statute itself does not have the court inquire of the jury what the

---

1 All statutory references are to Vernon's Texas Civil Statutes.

claimant's earning *capacity* was before injury, and what it was after injury. It would have been easy for the Legislature to have said this if that was its intention. And, to me, the opinion of the majority is a forceful and meritorious argument in favor of amending the statute in that regard. But the Legislature , which clearly recognized a difference between wages actually earned and earning capacity, has, for reasons best known to itself, plainly stated that the recovery shall be, in this situation, the difference between actual wages before and earning capacity afterward.

It may be granted that this results in an inconsistency. The majority has struggled well and sincerely to reconcile this inconsistency, and its opinion is well written and persuasive. The choice for the Court is not an easy one on either side. Yet the basic fact remains that after careful study, and presumably after weighing the arguments of management, the insurance companies, and labor, the Legislature itself has set the measure of recovery: the difference between actual earnings before and earning capacity after, not earning capacity before versus earning capacity after.

The majority refers to the definition of partial incapacity which is given by the trial court in this case. The definition has given the Court great difficulty in deciding the question of conflicts in the jury's answers. As I interpret the definition it told the jury that an employee was partially disabled when (1) an employee, after an injury, was able only to perform part of the usual tasks of a workman, but nevertheless was able to procure and retain employment reasonably suited to his condition; or (2) an employee was able to perform labor of a less remunerative class "whereby he suffers a depression or reduction in his earning capacity."

Again, the definition is Court-made. It is not in the statute. Assuming its correctness, however, the jury was entitled to find the existence of the circumstances which are set out in the first alternative rather than the second.

The language of the Court of Civil Appeals in *Maryland Casualty Co. v. Drummond* (1938), 114 S.W. 2d 356, in which a writ of error was refused by this Court, supports the view of the majority here in the situation in which the average weekly wage of the employee is determined under Subsection 3 of Section 1 of Article 8309. (That subsection is applicable where

the claimant has not worked substantially the whole of a year, and there is no employee of the same class in similar employment in the same area.) In such event, the Industrial Accident Board and the jury are authorized to compute the claimant's average weekly wages "in any manner which may be deemed just and fair to both parties." But regardless of what is said in the *Drummond* opinion about recovery under Subsection 3, it is clear, at least to me, that the average weekly wages under Subsection 1, which is applicable here, says, and means, *wages actually earned* [wages "which he shall have earned"], but not earning *capacity*. I would therefore reserve judgment on an alleged conflict when and if this situation arises under a Subsection-3 case. Even in that situation, it can be argued that the duty of the jury is to fix a fair wage rate for the claimant, not based on the individual capacity of the claimant, but based on a fair wage rate for an ordinary person doing what the particular claimant did under similar circumstances.

To me, the answers of the jury (the stipulation) that the claimant's *actual earnings* before injury were $100 per week, that he received some partial incapacity, and that his actual earning *capacity* after the injury is $100 week, are not necessarily in irreconcilable conflict. I would grant the writ of mandamus.