**Leo F. MALONE, Appellant,**

v.

**ROYAL INDEMNITY COMPANY, Appellee.**

**No. 16896.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 23, 1968.

Davis & Foster and Fred W. Davis, Arlington, for appellant.

Stone, Tilley, Parker, Snakard, Law & Brown and Lawton G. Gambill, Fort Worth, for appellee.

## OPINION

RENFRO, Justice.

The plaintiff, Leo F. Malone, sought benefits under the Workmen's Compensation Law for 401 weeks at the maximum sum of $35.00 per week, plus $399.60 for medical services.

Understandably he was very unhappy and quite disappointed when, as a result of a jury verdict, judgment for $35.00 for one week was entered for him.

He appealed.

The jury's answers to the first six issues submitted and stipulations of the parties established that plaintiff sustained a personal injury on March 15, 1966, while in the course of employment for General Motors Corporation, that such injury was the producing cause of temporary total disability beginning on March 15, 1966, for a duration of one week, and that the just and fair average weekly wage was $120.00.

Issue No. 7 reads: "Do you find from a preponderance of the evidence that the plaintiff Mr. Malone has sustained, or will sustain, any partial disability as a result of his injury (if any injury you have found)? Answer Yes, or No. Answer Yes."

The jury in Issues Nos. 8, 9 and 10 found that the injury was a producing cause of plaintiff's partial disability for a period beginning March 22, 1966, and ending September 1, 1966.

The jury was required in Issue No. 11 to "Find from a preponderance of the evidence the average weekly wage-earning capacity (if any) of plaintiff Mr. Malone during the period of his partial disability (if any).

"Answer in Dollars and Cents, if any, or answer None, as you find the fact to be."

The jury answered, "One hundred twenty-one dollars & 20 cents ($121.20)."

The jury was instructed, "By the term PARTIAL DISABILITY is meant disability less than total, where an employee, by reason of injuries sustained in the course of his employment, is able to perform part of the usual tasks of a workman and, nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work; or he is only able to perform labor of a less remunerative class than he performed prior to his injury, whereby he suffers a depreciation or reduction of his earning capacity."

In three points of error plaintiff takes the position that, (1) the answer to No. 11 was against the overwhelming weight and preponderance of the evidence; (2) there was no evidence to support the answer to No. 11; and (3) Issues Nos. 9, 10 and 11 are in irreconcilable conflict with Issue No. 7.

Plaintiff testified: On March 15, 1966 he was hanging a seat-back in a station wagon when his feet went from under him, causing the thirty-five pound seat-back to hit him along the belt line. The floor was concrete. After a few minutes he asked the foreman for a pass to the hospital. He reported the injury and was in the plant hospital within fifteen minutes. He told the doctor he had fallen, was hurting everywhere from groin up and asked for x-rays of back. Doctor x-rayed elbow, which had

struck the floor at time of the fall, but not the back.

From the hospital plaintiff went home, missing two and one-half hours' work. He returned to work next day. His groin swelled on right side. Subsequently, on June 19, he had a hernia operation. (In his pleadings plaintiff relied on general injury and during trial told the court he was not relying on a specific injury, hernia, but was seeking total permanent recovery under the general injury pleading.) Day after injury he felt pain in area of waist line "down through my hips and back up," bottom part of rib cage, and in lower lumbar area. Took heat treatments at Chester Clinic. Has continued to have stiff back, has hard time getting around, and at times, when he moves leg, has shooting pains.

He continued to work for General Motors until April 22. His job was to hang car parts on the line so they could be painted. He obtained note from doctor requesting Company not to request plaintiff to handle anything too heavy for him. He left employment of General Motors because they refused to give him lighter work and he could not continue to perform regular duties. As of time of trial did not have full use of left leg and back. In September went to work for Murray Gin Co. at $1.85 per hour, since increased. In meantime had applied for several jobs in Dallas but could not pass physical.

On cross-examination he testified: Has taken no treatment for back except heat treatment. He has not seen his doctor, about his injuries, since the day after the accident. Dr. Maxwell was a doctor of his own choice. Two and a half weeks after the injury he drove his automobile 450 miles to Wichita, Kansas, looking for work. He decided to leave General Motors and go to Kansas because of family trouble. He signed an instrument at time he left General Motors showing that his leaving was voluntarily to go to another job out of the state. He passed the physical when he went to work for the Murray Gin Co., and does a full day's work at hard labor.

By deposition Dr. Garrett W. Maxwell testified: He is associated with Chester Clinic. He saw plaintiff on March 16, 1966. Plaintiff's complaint was pain in back, left hip and left elbow. Plaintiff made no complaint as to pain in lower abdomen or groin area. He was treated with muscle relaxants, analgesics, and diathermy, physiotherapy treatment, heat to the involved areas. Recommended bed board at home for back. Plaintiff returned on the 17th and 18th for therapy treatments. He was supposed to take more treatments but never returned.

No complaint was made by plaintiff as to groin pain or lower abdominal pain, and witness' records reflect no evidence of hernia. Plaintiff returned on May 25, 1966 for treatment for sore throat, flu-like symptoms, muscle aching and diarrhea. There was no mention made by plaintiff at that time as to abdominal or groin pain.

Other evidence was tendered, some of which was contrary to the jury's answer to issue No. 11 and some of which directly supports the jury's answer.

■ The evidence clearly supports the jury's answer to issue No. 11, and the finding is not against the great preponderance of the evidence.

Having found that issue No. 11 is supported by the evidence, our real problem is to determine whether issues Nos. 9, 10 and 11 conflict with issue No. 7 so as to require a reversal under authority of Employers Reinsurance Corp. v. Holland, 162 Tex. 394, 347 S.W.2d 605 (1961), or whether the apparent conflict should be reconciled and judgment affirmed under authority of Indemnity Insurance Co. v. Craik, 162 Tex. 260, 346 S.W.2d 830 (1961).

We have set out the court's definition of "Partial Disability" in the instant case on page 55 of this opinion, and issue No. 7 on page 55. Issues Nos. 8, 9 and 10 all referred to "Plaintiff's Partial Disability." In issue No. 11 the term "weekly wage-earning capacity" was used.

We have compared the definition of "Partial Disability" in the Craik case with the definition given in the instant case.

In the Craik case the definition was as follows: "By the term 'partial disability' is meant disability less than total where an employee, by reason of injuries sustained in the course of his employment, is only able to perform part of the usual tasks of a workman, but, nevertheless, he is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or he is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depreciation or deduction in his earning capacity." In our opinion the two definitions are so similar that they must be construed as substantially identical.

In the instant case, however, the definition of "Partial Disability" is even more in favor of defendant's position than the definition in Craik, for the reason that in this case the court divided the first and second alternatives with a semicolon rather than a comma as in the Craik case.

The transcript filed in this court shows an "inked in" comma at the crucial point, but our inspection of the original charge, delivered to this court by the District Clerk in obedience to an order issued by this court under Rule 379, shows clearly and unmistakably that a semicolon was indeed used in the original definition submitted to the jury.

In the Craik case the court held: "It is the duty of the court to reconcile apparent conflicts in jury findings if reasonably possible. * * * The apparent conflict in the jury's answers to special issues Nos. 9 and 13 may reasonably be resolved by a precise interpretation of the definition of 'partial disability' by which the jury had to be guided in answering special issue No. 9. It will be observed that under the foregoing definition the jury could find that the plaintiff had suffered a partial disability without finding that he had suffered 'a depreciation or deduction in his earning capacity'. Under the definition, the jury was authorized to find partial disability if the plaintiff was 'able to procure and retain employment reasonably suitable to his physical condition and ability to work' even though he had suffered no depreciation in his earning capacity." concluding, "It follows that there is no fatal or irreconcilable conflict in the jury's answers to special issues Nos. 9 and 13, even when considered with the stipulation of the plaintiff's average weekly wages."

 We think the Craik case is controlling in the case before us. As we construe the Craik case we must hold there is no irreconcilable conflict between the finding that plaintiff sustained partial disability and the finding that he did not sustain any loss in wage-earning capacity.

Believing that, under the record, the Craik case requires an affirmance of the trial court's judgment, we do affirm.

Affirmed.