ELECTRIC MUTUAL LIABILITY IN-
SURANCE COMPANY, Appellant,

v.

Ira Gillis WHITE, III, Appellee.

No. 17342.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

March 29, 1979.

Rehearing Denied April 26, 1979.

Tekell, Book & Matthews, Hal R. Up-
church, Houston, for appellant.

Leebron & Robinson, Laron D. Robinson,
Houston, for appellee.

Before COLEMAN, C. J., and PEDEN
and DOYLE, JJ.

PEDEN, Justice.

Electric Mutual Liability Insurance Com-
pany appeals from a judgment in a Work-
er's Compensation suit based on jury find-
ings that Ira Gillis White was totally inca-
pacitated for three months and has a partial
incapacity that is permanent. Electric Mu-
tual maintains that the trial court erred in
excluding evidence of White's wages at the
time of his injury, that there was insuffi-

cient evidence to support the jury's finding as to his average weekly earning capacity during partial incapacity, and that such finding was against the great weight of the evidence. We affirm.

Gillis White injured his back on December 1, 1976, while working in the course of his employment for the General Electric Company. Surgery was performed on him for a herniated disc. On March 14, 1977, he returned to work on a part-time basis and about a week later resumed work full time.

White has been able to continue working but says he is in constant pain and has found it necessary to take time off from work for traction treatments prescribed by his doctor. He says his concentration and attention to detail required on his job have been impaired by the continual pain.

Dr. Phillip Daley, White's treating physician and surgeon, testified that White's condition is suggestive of chronic low back inflammation as a result of his injury. He stated: "Statistically, once a man has a ruptured intervertebral disc and laminectomy, his chance for having to be operated on again in his lumbar region for recurrent disc or another disc or scar tissue is significantly greater . . . " He said that White's ability to compete in the job market has been diminished.

The jury found in response to Issue 1 that White was totally incapacitated from December 1, 1976, until March 14, 1977, and found, in response to Special Issues 2, 2A and 2B, that beginning on March 14, 1977, he has a partial incapacity that is permanent. In answer to Issue 2C, it found that his weekly earning capacity during his partial incapacity is $150.

In points of error 1–4, Electric Mutual contends that the trial court erred in excluding not only White's testimony concerning his wages prior to and at the time of his injury but also the parties' stipulation concerning White's average weekly wage at the time of his injury. Electric Mutual maintains that this evidence was relevant and material to the issue of whether White sustained a "reduction in earning capacity" as used in the trial court's definition of "partial incapacity."

The court's charge defined "partial incapacity" as "any degree of incapacity less than total incapacity, whereby a person suffers a reduction in earning capacity . . ." "Earning capacity" was defined as "ability and fitness to work in gainful employment for any type of remuneration, including salary, commissions, and other benefits, whether or not the person is actually employed. It does not necessarily mean the actual wages, income, or other benefits received during the period inquired about."

Section 11 of Article 8306 provides that in the event of partial incapacity, the injured employee is entitled to a "weekly compensation equal to sixty-six and two-thirds per cent (66⅔%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity." In our case the parties stipulated, outside the presence of the jury, that White's average weekly wage as computed under the Worker's Compensation Act was $366.75.

■ The purpose of the act is to compensate an injured employee for loss in earning capacity, not for the loss of earnings or for the injury sustained. *Employers Reinsurance Corp. v. Holland*, 162 Tex. 394, 347 S.W.2d 605 (1961); *Maryland Casualty Co. v. Stevens*, 55 S.W.2d 149, 153 (Tex.Civ. App.1932, writ ref.). One is not partially incapacitated unless his average weekly wage earning capacity after injury is less than his average weekly wages before injury. *Employers Reinsurance Corp. v. Holland, supra.*

In the charge in our case, the definition of "earning capacity" clearly stated that earning capacity "does not necessarily mean the actual wages, income, or benefits received during the period inquired about."

■ The fact that a claimant works and earns the same or more money after his

injury than before is not conclusive on the issue of his incapacity to perform labor, but is simply evidentiary. *Maryland Casualty Co. v. Goetz,* 337 S.W.2d 749 (Tex.Civ.App. 1960, no writ); *Texas Employer's Insurance Ass'n v. Evers,* 242 S.W.2d 906 (Tex.Civ. App.1951, writ ref. n. r. e.). Electric Mutual asserts that it was vital to its defense that the court admit testimony concerning White's preinjury wages. We disagree. Although the jury was not apprised of the actual dollar amount White received prior to his injury, it was shown that he had returned in March of 1977 to basically the same job at a yearly salary of $14,189, that he had been receiving raises, and that as late as March of 1978, he was making $15,-498.

" . . . [A]verage weekly wages before injury *must* represent, in law, earning capacity before injury." *Employers Reinsurance Corp. v. Holland, supra.* But our courts have never held that wages after injury represent capacity. To do so would ignore such important employment factors as tenure, experience, inflation, and supply and demand.

■ We consider that Electric Mutual was entitled to have evidence concerning White's pre-injury wages admitted, but we cannot say that the exclusion of this information constituted reversible error. Rule 434, T.R.C.P. The jury was made aware that White was earning more at the time of trial than he was before his injury. The exclusion of the actual dollar amount did not seriously weaken Electric Mutual's defense; "wages" and post-injury "earning capacity" are not synonymous.

■ Electric Mutual's points of error 5 and 6 assert that there is insufficient evidence to support the jury's answer to special issue 2C (that White's average weekly wage earning capacity during incapacity was $150) and that such answer is against the great weight and preponderance of the evidence.

Electric Mutual points out that in addition to the fact that White is earning more money than before his injury, there has only been one complaint about his work, his job does not involve manual labor, and to date his doctor has "seen no reason to restrict him from doing the white-collar type job that he's doing."

Concerning his job requirements, White says it takes him longer to get his work done, and when cross-referencing orders through the large books that are used in his work, he sometimes has to sit on the floor to leaf through the books rather than carry them to his desk. Even sitting or standing for periods of time causes discomfort. In July, his employer complained to White about his performance.

Dr. Daley testified that White's complaints of pain and discomfort were consistent with his injury and that his diagnosis of White's condition was suggestive of a chronic low back inflammation that is probably permanent. He said pain can be disabling, particularly if it persists over a long period of time. He testified that he would not certify White to do any heavy or manual labor and that "[a]nything that would stress his lumbosacral region, such as prolonged standing, or even prolonged sitting in one position may cause him discomfort and decreased productivity." When asked whether White was capable of performing his usual white-collar duties, the doctor replied:

No sir. That is not predictable. I think he could have difficulties even performing white collar work. At times the worst position for a patient who has back disease is a prolonged sitting position. To date I have seen no reason to restrict him from the white-collar job he's doing.

■ There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered a disability. If after injury his capacity and efficiency to work are not the same as before the injury, he is entitled to compensation even though he is being paid as much or more than he earned prior to or at the time of injury. *Texas Employers' Insurance Ass'n v. Evers,*

242 S.W.2d 906 (Tex.Civ.App.1951, writ ref. n. r. e.); *Employers Reinsurance Corp. v. Ryne,* 531 S.W.2d 156 (Tex.Civ.App.1975, no writ.).

We stated in *Consolidated Casualty Insurance Co. v. Smith,* 309 S.W.2d 80 (Tex. Civ.App.1958, writ ref. n. r. e.);

In determining diminished earning capacity, you do not consider alone the ability of the workman to do the immediate type of work he is on. He may not always be on this type of work. He must compete in the mart of labor for jobs of varying types. Some of them are very advantageous but require hard manual labor. A jury has a right to consider this factor, in the light of all the testimony, in determining lessened earning capacity. *Texas Employers' Ins. Ass'n v. Evers,* Tex.Civ.App., 242 S.W.2d 906 [writ.] ref., n. r. e.; *Texas Employers' Ins. Ass'n v. Taylor,* Tex.Civ.App., 276 S.W.2d 901, writ. ref., n. r. e.

We hold that the evidence presented was sufficient to support the jury finding that during his incapacity White's weekly wage earning capacity was $150.

Affirmed.