TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Barry PAXTON, Appellee.

No. 6973.

Court of Civil Appeals of Texas, El Paso.

Feb. 25, 1981.

Rehearing Denied March 18, 1981.

Turpin, Smith, Dyer & Saxe, L. Lloyd MacDonald, Midland, for appellant.

Childs & Bishop Law Offices, Inc., Jerry P. Childs, Odessa, for appellee.

## OPINION

WARD, Justice.

This is a workers' compensation case in which the jury found that Barry Paxton sustained 15 weeks of temporary total disability and 386 weeks of partial disability. The jury further found that the earning capacity during the period of partial disability was the sum of $70.00 a week. The trial Court entered judgment for the workman for 14 weeks and 2 days temporary total disability, and maximum benefits for partial disability for the maximum 300 weeks, based on an earning capacity reduced to $70.00 per week from the $235.38 stipulated as an average weekly wage at the time of the accident. The carrier appeals, and principally questions the sufficiency of the evidence to support the jury finding that the wage earning capacity during the period of partial disability was $70.00. We will affirm.

The factual sufficiency of the evidence supporting the finding that $70.00 was the average weekly wage earning capacity during the period of partial disability is questioned by the Appellant's first two points. We will consider the whole record in this regard, not only to determine whether there is some evidence to support the jury's finding on the special issue, but also to determine whether, considering all the evidence, the final finding is not manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 at 662 (1951). In this regard, the testimony was from the claimant with support from his parents and his sister. The Appellee was both an ironworker and a roughnecker. When he was 23 years old, he was working as a floorhand for Tri-Service Drilling Company, and was injured on June 26, 1975, when he was hit in the back and knocked down by cable tongs which he was operating. He finished his shift, and, because his back was hurting, he took a warm bath at his home and applied some "Deep Heat." He continued to work for about two weeks, and then reported his injury as his back was getting worse. He went to his doctor, who ordered him to bed for two weeks. He remained under the doctor's care for four months. He did exercises and remained off work until September 11, 1975, when he was released by his doctor. He asked his doctor to release him as he needed the work, was in debt and couldn't live on the $70.00 compensation that he was being paid. At that time, he was paid the additional sum of $560.00 for eight weeks of compensation. He then worked for various

companies as a derrick hand as it was an easier job than being a floorhand. In August, 1976, he moved to Illinois, and he has since been employed there through his union as a structural iron worker. His work has been fairly regular except during the winter months during the bad weather. In his employment, he has been required to climb steel beams, reach out and grab and place other beams and bolt them in place. He has had to lift, stoop and bend. He also does the welding. He has been able to carry his welding hood and his other equipment. He wears an equipment belt, and that weighs forty or fifty pounds. Since his accident, he has been to Scott and White at Temple one time and to another doctor for medication.

As to his physical complaints, he stated that his back has always hurt since the accident; that he has stabbing pains in it; and at times it feels like it is on fire. He doesn't feel that he can do his work as good as he should, and lifting bothers him. He stated that after a whole day's work, he has to sleep on the floor, and at the time of trial, four years after his injury, he was still sleeping on the floor because of his back. Members of his family verified his statements, and added that at times he was bothered to the extent that he couldn't eat, couldn't get out of his chair, and could hardly walk.

Before his injury in 1975, he had worked up to earning $5.00 an hour as a floorhand on a seven-day work week, and it was stipulated that his average weekly wage at that time was $235.38. When he returned to work as a derrick hand, he made from $5.10 an hour up to $5.25 an hour. When he went to Illinois to work as a steel structural iron worker, he was paid $11.00 an hour and at the time of trial was making $13.00 an hour.

■■■ The Court's charge defined "partial incapacity" as a disability less than total and including a situation whereby he suffered a depreciation or reduction of his earning capacity. On the question of earning capacity, the jury was instructed as follows:

By the term 'wage earning capacity' is meant the ability and fitness to work in gainful employment for any type of remuneration, including salary, commissions, and other benefits, whether or not the person is actually employed. It does not necessarily mean the actual wages, income or other benefits, if any, received during the period inquired about.

These definitions were consistent with the general design of the Workers' Compensation Act, as far as general injuries are concerned, to compensate a worker for his loss of wage-earning capacity and not his actual loss of wages. *Employers Reinsurance Corporation v. Holland*, 162 Tex. 394, 347 S.W.2d 605 (1961). General statements applicable in reduction of earning capacity cases are summed up in *American Home Assurance Company v. Burnett*, 585 S.W.2d 793 (Tex.Civ.App.—Texarkana 1979, no writ). There, it is stated that the fact that a worker continues to work during the period of incapacity, and earning as much or even more money than before he was injured, does not as a matter of law mean that he has not suffered a reduction in earning capacity. It is only a circumstance to be considered by the factfinder in determining whether a loss of earning capacity has occurred. Direct evidence of disability resulting in a reduction of earning capacity is not required, and it may be established by circumstantial evidence upon the testimony of lay witness alone. Finally, direct evidence of the extent of the reduction of earning capacity is not absolutely necessary, and because of the uncertain nature of the damages suffered, the jury is allowed great latitude in arriving at the compensation to be awarded.

The Appellant argues that this Court should consider its statements and holdings in the following cases: *Montoya v. American Employers Insurance Company*, 426 S.W.2d 661 (Tex.Civ.App.—El Paso 1968, writ ref'd n. r. e.); *Texas Employers' Insurance Association v. Ontiveros*, 570 S.W.2d 98 (Tex.Civ.App.—El Paso 1978, no writ); and *Texas Employers' Insurance Association v. Flores*, 603 S.W.2d 330 (Tex.Civ.App. —El Paso 1980, no writ).

**708**

Those cases involved findings of total and permanent disability and are not applicable. There, this Court held that there either was no evidence of permanency or that only a partial disability was established. In this case, the Appellant does not question the finding that the Appellee sustained a period of total disability nor the findings that he sustained a partial disability for the maximum period of 300 weeks. Thus, the Appellee's claim that he was partially incapacitated and suffered a loss of wage-earning capacity is not challenged. We have also noted his increased earning record during the four years since his injury, but have considered that the period coincides with the period of extreme inflation which the country has experienced. Finally, we have considered his statements of his impaired physical condition. If his capacity and efficiency to work are not the same as before the injury, he is entitled to compensation regardless of the fact that he has earned more than at the time of injury. *Electric Mutual Liability Insurance Company v. White*, 579 S.W.2d 946 (Tex.Civ.App. —Houston [1st Dist.] 1979, no writ). The Appellant's first two points are overruled.

The Appellant's last point is to the effect that reversible error was committed when the Appellee's attorney asked to see the Appellant's attorney's file after the witness for the Appellant had stated that certain of his written memos were in the file. After the request was made, the Appellant's attorney stated, "Your Honor, he knows good and well the work product of a lawyer is not reviewable by any lawyer at any time." Thereafter, the jury was retired and nothing further in the way of any objection or request for an instruction or a motion for mistrial was made in front of the jury. We find no error. Further, if there was error, we find it was harmless. Rule 431, Tex.R.Civ.P.

The judgment of the trial Court is affirmed.