**ARGONAUT INSURANCE COMPANY,**
Appellant,

v.

**J. W. SHAWVER, Appellee.**

No. 16298.

Court of Civil Appeals of Texas.

Dallas.

Jan. 24, 1964.

Rehearing Denied Feb. 21, 1964.

L. W. Anderson, Dallas, for appellant.

Peery & Wilson, Kearby Peery, Wichita Falls, for appellee.

BATEMAN, Justice.

This is a workmen's compensation case in which the jury found that the employee, J. W. Shawver, suffered total and permanent disability from injuries received when he jumped from a maintainer or road grader which he was operating and wrenched his back. Judgment was for the lump sum due, the insurer, Argonaut Insurance Company, having agreed in its answer to discharge its liability, if any, in a lump sum.

The insurer appeals, its first point of error being that the trial court erred in failing to allow appellant to introduce into evidence certain Veterans Administration records indicating that at the time of the accident appellee was drawing a forty percent disability pension. However, appellant does not demonstrate by a proper bill of exceptions just what the records would have shown if admitted, making it impossible for us to determine the materiality or admissibility thereof or whether the error, if any, prejudiced appellant's right to the extent of probably causing the rendition of an improper judgment. Rules 372 and 434, Texas Rules of Civil Procedure; City of Kingsville v. Rivas, Tex.Civ.App., 355 S.W.2d 813, no writ hist. The point is therefore overruled.

By its second point of error appellant claims to have been prejudiced by the remarks of appellee's counsel, evidence introduced by him and arguments to the jury concerning hardship, which the court allowed to occur in spite of appellant's having agreed to redeem its liability in a lump sum. Counsel for appellee attempted to offset appellant's showing of work done by appellee during the time he claimed to be totally disabled by offering testimony of the appellee and others that appellee returned to work while still disabled because of the economic necessity to do so in order to support his wife and two children and to continue to make payments on his home and car, having no source of income other than his labor. Appellant's counsel objected that this was improper, and moved for a mistrial, on the grounds that such evidence was prejudicial and inflammatory since lump sum had been stipulated. The court sustained these objections several times and ruled that the evidence was inadmissible, but occasionally the witness would answer before the objection could be made, and in the course of the arguments on the objections appellee's counsel made certain remarks to the effect that appellee was entitled to show that he worked "under despair of necessity" and because of his poverty. In his argument to the jury he spoke of appellee's wife and two children in school, as well as the fact that appellant did not pay appellee any compensation for five months after the accident, and that the only source of income was what appellee could make, to all of which appellant continued to object and at least twice moved for a mistrial. The court overruled the objections to remarks of counsel and his jury argument and, by implication, the motions for mistrial.

Appellant argues that the cumulative effect of all of the foregoing incidents was to so prejudice it that the judgment against it should be reversed, citing Traders & General Insurance Co. v. White, Tex.Civ.App., 320 S.W.2d 702, err. ref. n. r. e. In that case, however, the employee apparently did not take the position, as appellee does here, that he was entitled to show his impoverished and needy condition as an explanation of why he went back to work when he was actually not physically able to do so. Moreover in the case before us counsel for appellee made no effort to contrast his client's poverty with the insurance company's wealth, as was done in the White case. Therefore, we do not consider that case as controlling on this point.

More in point is Muro v. Houston Fire & Casualty Ins. Co., Tex.Civ.App., 310 S.W.2d 420, err. ref. n. r. e., wherein the insurer stipulated that weekly installments of compensation would work a manifest hardship and injustice upon the employee and agreed that he should have a lump sum payment. At the trial, the insurance company produced extensive evidence of the employee's employment after the accident, taking that employment week by week, and employer by employer, and showing the strenuous nature of the work the employee performed. The employee then sought to explain those facts by proof that he was compelled to work by reason of economic necessity to support his family, but he was not permitted by the court to do so. The San Antonio Court of Civil Appeals held that this was error, that the tendered proof related to issues different

from the lump sum and accelerated payment and that the employee was entitled to explain that he worked to support his family at a time when he was not physically able to do so, when he was hurting and in pain, because he needed the money. The court then said:

> "Defendant, by admitting hardship which would permit a lump sum payment in the event it lost the case, then used the admission of hardship as a means to defeat the case itself. The admission was for the purpose of avoiding one issue, but it was used to permit the defendant to deny the extent and duration of the injury without an opportunity by employee for explanation. In our opinion, this was error."

The same court later said, in Texas Employers Insurance Ass'n v. Tijerina, Tex. Civ.App., 354 S.W.2d 194, 196, err. ref. n. r. e.:

> "Evidence is admissible on disputed issues. If hardship is denied, there is an issue. If hardship is admitted, but the insurer later proves that the employee is able to work and has worked, then hardship is yet an issue to prove that the work was done under the whip of necessity."

■ Appellant's second point is overruled.

The jury found in answer to Special Issue No. 5 that appellee's disability was total, and in answer to Special Issue No. 8 that such disability was also permanent. Appellant objected to Special Issue No. 8 because there was no evidence and insufficient evidence to justify submission thereof and its third point of error here is that the trial court erred in failing to sustain such objections. Its fourth point of error is to the effect that the trial court erred in rendering judgment based upon the answer to Special Issue No. 8 because such finding was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, there being no evidence, or insufficient evidence, to support such finding.

These points will be considered together as they were in the briefs of the parties.

A careful study of the entire statement of facts reveals that in November 1961, while operating a maintainer for his employer, Flenniken Construction Company, the appellee jumped to the ground when the maintainer started to slip down the slope he was working on, and in doing so wrenched his back. He worked the remainder of that day, which was a Friday. On the next day, Saturday, his foreman came by to see him and tried to get him to return to work that morning, but appellee declined to do so stating that he could not get out of bed. On that same day he went to Dr. Rowland, the company doctor at Sherman, Texas, for examination and treatment. Dr. Rowland wanted to put him in the hospital but he declined to go until the following Monday, hoping to improve in the meantime. On the following Monday he went back to work and worked several days, seeing Dr. Rowland daily, and the following week he went to the hospital, where he stayed a week and was put in traction.

He stayed at home several days and then about December 10, 1961 went to work for Johnson, Drake & Piper, operating a crane which he says was easier work for him than operating the maintainer. He received $3.97½ per hour as a crane operator, as compared to $2.25 an hour he had received as a maintainer operator. Appellee testified, with respect to his operation of the crane, that sometimes he would sit there on the job for half a day at a time and never make a lift or anything with the crane, that he was in the seat or he would get out and move around, that sometimes he would work three or four hours and then he would be through, and at other times he would have to "stay with it pretty closely." He said his condition became worse as he continued on that job and that he finally concluded that it was unsafe for him to operate the machinery, which was the reason he did not seek further employment operating a crane. He worked for Johnson, Drake & Piper approximately five months, or until April 1962.

In June 1962, after being off thirty or forty days, he went to work for his brother on his ranch and received $100.00 a week over a period of about three months. On November 7, 1962 he went to work for T. L. James Construction Company in Dallas after taking a physical examination consisting of examination of eyesight and blood pressure and checking for a rupture, and tried to run a maintainer again, which he did for parts of two weeks, receiving $2.25 per hour, and worked there until shortly before the trial in February 1963.

He testified that during all of this time he was regularly taking "pain pills" which had been prescribed for him by Dr. Rowland. A friend, Mrs. McDaniel, testified that "he was always in a lot of pain" and took medicine for pain all the time. He was examined by Doctors Butte and Nash in Dallas in March or April 1962, having been sent to Dr. Butte, an orthopedic specialist, by Dr. Rowland, and having been sent by Dr. Butte to Dr. Nash, a neurosurgeon. Dr. Rowland prescribed a brace which he has been wearing all of the time except at night. He testified that he was aware of his back all of the time, that if he takes care of himself and doesn't slip on the floor and doesn't do too much walking or lifting, or anything like that, he does "fine", but has pain when he turns too quickly or stoops over to pick up something. He testified that he favored his left leg, which burns and goes numb or asleep, into his big toe; that he can bend over a little frontward if he has to, and can bend a little either way, but not half as much as he could before the accident, without pain; that he can lift but if he does it hurts him and he can feel it even on lifting a five-pound bag of sugar.

He further testified that since the accident he has been out to the Veterans Administration dance hall and has been dancing; that he applied for unemployment compensation but did not collect anything; that in view of his previous experience in operating cranes he does not feel competent to get a job on that type of crane and retain it.

The superintendent for T. L. James Construction Company testified that he hired appellee about November 6, 1962 as a maintainer operator, that appellee never complained of any condition and that his work was satisfactory; that he never saw him limp or give other evidence of injury, but that if he had known appellee was wearing a back brace the company wouldn't have allowed him to be hired. It was also brought out that appellee had played poker on several occasions, about once each week, and sometimes played all night and worked next day.

Dr. Rowland testified that an x-ray of appellee's back indicated to him that the back was normal; that he at first thought he had an acute lumbosacral strain with radicular pain, evidenced by muscle spasms; that he didn't know whether he had a ruptured disc or not, which was why he sent him to Dr. Felix Butte, an orthopedic surgeon in Dallas; that appellee did have limited ability to bend and the straight leg raising test was positive and there was a suspicion of sensory changes over the thigh. Dr. Nash testified that he first examined appellee in April 1962 and couldn't find anything seriously wrong with his back, that he had no sign of a ruptured disc, that he saw appellee again in January 1963 and found little difference in his condition, and still found no evidence of a ruptured disc. Moving pictures were introduced showing appellee performing certain activities such as welding while in a sitting or squatting position, cutting certain metal pipe with a cutting torch, walking and carrying a saddle.

Dr. John Florence testified for appellee as to the details of his examination of him, as a result of which he was of the opinion that appellee had irritation to the nerve roots emerging from both the fourth and fifth interspaces of his spine, with more irritation at the fourth interspace on the left side, and that in his opinion appellee should not do any bending, lifting or stooping; that he could possibly get by with it for a day or two or maybe hours, but any time he attempted to do that he will have more

swelling about the nerves and more pain and be bedfast again for several days; that he thinks the swelling on the nerve roots is caused by a rupture of the disc; that he knows of no conservative treatment that would help this situation or cure it or bring it up to where this man could do ordinary manual labor, that he thinks the patient has had all the conservative management he would know to use, without improvement, and that he feels there is no alternative other than surgery, that he would reject appellee for any type of employment, even light work, because he is going to continue to have trouble and will have more trouble with time.

The written report of the doctor who gave appellee his pre-employment physical examination for T. L. James & Company was introduced in evidence and is somewhat difficult to decipher, but it is clear there is no statement thereon to indicate an examination of appellee's back. It does show that the doctor recommended him for employment.

There was also in evidence a copy of appellee's application for unemployment compensation dated November 21, 1962 and which contains the following printed statements with no exceptions thereto noted: "(1) I am able to work; (2) I am available for work; * * * (4) I am not receiving nor are there now accruing to me any disability benefits under the Workmen's Compensation Law of any state or similar law of the United States * * *."

Appellant contends that the findings of permanent total disability are improper in view of the evidence of appellee's work for wages, his dancing, poker playing and other activities since the accident, but as said in Texas Employers Ins. Ass'n v. Pillow, Tex. Civ.App., 268 S.W.2d 716, 721, err. ref. n. r. e.:

"It is well settled that the fact that a worker is compelled to work by the spur of necessity after the injury is not conclusive on the issue of total and permanent disability. Texas Employers' Insurance Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302; Davies v. Texas Employers' Insurance Ass'n, Tex.Com. App., 29 S.W.2d 987; Traders & General Insurance Co. v. Collins, Tex.Civ. App., 179 S.W.2d 525; Lott v. American Surety Co. of New York, Tex.Civ. App., 140 S.W.2d 928."

To the same effect is the following language used by the U. S. Court of Appeals for the 5th Circuit in Mabry v. Travelers Ins. Co., 193 F.2d 497, 498:

"Pinched by poverty, beset by adversity, driven by necessity, one may work to keep the wolf away from the door though not physically able to work; and, under the law in this case, the fact that the woman worked to earn her living did not prevent a jury from finding, from the evidence before it, that she was totally and permanently disabled even while working."

Other cases supporting this principle are: Smith v. Consolidated Casualty Ins. Co., Tex.Civ.App., 290 S.W.2d 589, err. ref. n. r. e.; Zurich General Accident & Liability Ins. Co. v. Johnson, Tex.Civ.App., 202 S.W.2d 258, affirmed 146 Tex. 232, 205 S.W.2d 353; Texas Employers Ins. Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302, err. ref. n. r. e.; Davies v. Texas Employers Ins. Ass'n, Tex.Com.App., 29 S.W.2d 987; Trinity Universal Ins. Co. v. Scott, Tex.Civ. App., 342 S.W.2d 348, err. ref. n. r. e., and the many cases cited therein.

■ The definition of "total disability" given by the court in the charge correctly stated that the term "does not imply any absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman, in such a way as to enable him to procure and retain employment, is regarded as being totally incapacitated, or totally disabled." This is the definition expressly approved by our Supreme Court in Texas Employers Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W. 2d 1000, 1001.

Our Supreme Court has also held that "if there be any reasonable doubt which may arise in a particular case as to the right of the injured employee to compensation, same should be solved (*sic*) in favor of such right." Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315, 318.

Appellant relies heavily on the cases of Indemnity Ins. Co. of North America v. Cady, Tex.Civ.App., 356 S.W.2d 323, no wr. hist., and Texas Employers Ins. Ass'n v. Vineyard, Tex.Civ.App., 316 S.W.2d 156, no wr. hist. However, we do not regard our decision here as being in conflict with those cases. In the Cady case the evidence showed that nine weeks after the injury the employee returned to oil field work as a "roughneck," the same work he had been doing when injured, and worked fifty-six hours a week, and he testified that he had worked about as "steady since the accident" as he worked the year before. In the Vineyard case it was shown that the employee held a number of good jobs for several years after his injury and up to the time of trial, receiving several promotions and increases in pay. No such showing was made in the case now under review.

■ Accordingly, we hold that Special Issue No. 8 was properly submitted, and that both it and the jury's answer thereto were supported by the evidence and were not contrary to the overwhelming weight and preponderance thereof. The third and fourth points of error are overruled.

■ By its fifth point of error appellant complains that the court erred in permitting appellee's witness, Dr. John Florence, to testify: "I would reject this patient for any type of employment, even light work, because of the fact that the patient is going to continue to have trouble, he is going to have more trouble with time, and I don't feel that any company should be liable for his condition," over the objection that the proper predicate had not been laid with reference to the witness' knowledge of the standards of employment in Grayson County in connection with the operation of maintainers or any other types of equipment. It should be noted that this witness was not asked his opinion as to whether appellee would pass the standard or customary requirement of a pre-employment physical examination, as in Texas Employers Ins. Ass'n v. Polk, Tex.Civ.App., 269 S.W.2d 582, err. ref. n. r. e., relied on by appellant, but only as to whether the witness himself would pass the appellee. The witness was an Oklahoma doctor and had had a great deal of experience in that state in giving people pre-employment examinations. The objection, therefore, went to the weight rather than the admissibility of the testimony. Texas Employers Ins. Ass'n v. Tucker, Tex.Civ.App., 165 S.W.2d 780, err. ref. w. o. m. The fifth point is overruled.

■ While Dr. Florence was on the stand appellee's counsel asked him his opinion as to what the future held for appellee, in the absence of surgery, with respect to his ability to do ordinary manual labor. Objection was made that this question did not contain the proper test in law; i. e., was not restricted to appellee's ability to perform the usual tasks of a workman; and appellant's sixth point of error on appeal is that this objection was overruled and the witness permitted to say: "I don't believe that this patient can do ordinary manual labor without a laminectomy. That is, opening up of the spine and removing the disc tissue." The point is without merit and is overruled. That appellee could or could not do ordinary manual labor, we think, was an important question for the jury to consider, and they were entitled to weigh this doctor's opinion thereon in determining the larger, ultimate issues of total and permanent disability.

■ As additional reasons for overruling the fifth and sixth points of error, we point out that this evidence complained of was cumulative of other testimony proving the same things; also that the errors, if any, in admitting it were not such as to have probably caused the rendition of an im-

proper judgment and were harmless. Rule 434, T.R.C.P.

■ Appellant's seventh point of error complains of the testimony of the witness Bob Riley Ward, a co-worker with appellee at the time of the accident, to the effect that their foreman had told him that appellee had said that he was sore and that he would be back to work, over appellant's objection that this was hearsay. The record shows that this testimony was merely cumulative of a similar statement brought out on direct examination of the witness by appellant's counsel; also that no objection was made to the particular question so answered by the witness, and no motion to strike the same (although similar objections to somewhat similar questions had previously been made and overruled). Moreover, it clearly appears that if the court were in error in permitting the witness to so testify, the error was wholly harmless; the testimony could not possibly have prejudiced appellant or had any effect on the outcome of the case. Rule 434, T.R.C.P.

■ By its eighth point of error appellant complains of the testimony of Virgil Jones, who had been appellee's foreman at the time of the accident, to the effect that he had been around appellee and noticed the way he gets around and heard him complain, and that from his observation and hearing the complaints he would not hire appellee to do construction work, over appellant's objection that the witness had had no medical training and was not qualified to give an opinion as to whether a man is employable. This point will also be overruled. The witness was not expressing an opinion as to employability or disability of appellee but was merely making a statement as to what he himself would do in the matter of hiring appellee. Moreover, immediately following the admission of this testimony, and on cross examination by appellant's attorney, the witness qualified his statement by testifying that ordinarily when people are hired they are referred to a doctor for pre-employment physical ex-amination, and that he abides by what the doctor says with reference to whether or not the man can do the job, even though he might have a different opinion, and that what the doctor says with reference to whether or not the man might be employed is really what counts. The testimony was also cumulative of what Doctors Florence and Rowland had said. Therefore the error, if any, in admitting the same was harmless. Rule 434, T.R.C.P.

Finding no error requiring reversal, we affirm the judgment of the court below.

Affirmed.